[940 NE2d 899, 915 NYS2d 194]

In the Matter of NEW YORK STATE UNITED TEACHERS, Respondent, v BRIGHTER CHOICE CHARTER SCHOOL et al., Appellants.

Argued October 13, 2010; decided November 18, 2010

**POINTS OF COUNSEL**

*Bond, Schoeneck & King, PLLC*, Albany (*Nicholas J. D'Ambrosio, Jr.*, and *Joanmarie M. Dowling* of counsel), for appellants. I. The commercial or fund-raising purposes exception applies to public and charter school employees. (*Matter of New York State Rifle & Pistol Assn., Inc. v Kelly*, 55 AD3d 222; *Matter of Federation of N.Y. State Rifle & Pistol Clubs v New York City Police Dept.*, 73 NY2d 92; *Matter of Scott, Sardano & Pomeranz v Records Access Officer of City of Syracuse*, 65 NY2d 294.) II. An unwarranted invasion of personal privacy exists when the requester seeks information that can be used to obtain names and addresses for commercial or fund-raising purposes. (*Matter of Federation of N.Y. State Rifle & Pistol Clubs v New York City Police Dept.*, 73 NY2d 92; *Matter of New York State Rifle & Pistol Assn., Inc. v Kelly*, 55 AD3d 222; *Matter of Siegel,*

*Fenchel & Peddy v Central Pine Barrens Joint Planning & Policy Commn.*, 251 AD2d 670; *Matter of Scott, Sardano & Pomeranz v Records Access Officer of City of Syracuse*, 65 NY2d 294; *Matter of Property Tax Reduction Consultants, Inc. v Township of Islip*, 21 AD3d 376; *Matter of Comps, Inc. v Town of Huntington*, 269 AD2d 446.)

*Marilyn Raskin-Ortiz*, Latham, and *James R. Sandner* for respondent. I. Public Officers Law § 89 (2) (b) does not apply where compliance with the Freedom of Information Law request would not disclose information about the personal activities of persons in their private lives. (*Matter of Federation of N.Y. State Rifle & Pistol Clubs v New York City Police Dept.*, 73 NY2d 92; *Matter of New York State Rifle & Pistol Assn., Inc. v Kelly*, 55 AD3d 222; *Matter of Scott, Sardano & Pomeranz v Records Access Officer of City of Syracuse*, 65 NY2d 294; *Matter of Goodstein v Shaw*, 119 Misc 2d 400; *Kwasnik v City of New York*, 262 AD2d 171.) II. Appellants have failed to establish that New York State United Teachers' Freedom of Information Law request for the names of their employees falls squarely within the ambit of the fund-raising exemption of Public Officers Law § 89 (2) (b) (iii). (*Matter of Data Tree, LLC v Romaine*, 9 NY3d 454; *Matter of Empire Realty Corp. v New York State Div. of Lottery*, 230 AD2d 270; *Matter of Fink v Lefkowitz*, 47 NY2d 567; *Matter of Hanig v State of N.Y. Dept. of Motor Vehs.*, 79 NY2d 106; *Matter of Federation of N.Y. State Rifle & Pistol Clubs v New York City Police Dept.*, 73 NY2d 92; *Matter of New York Teachers Pension Assn. v Teachers' Retirement Sys. of City of N.Y.*, 71 AD2d 250; *Matter of Crucible Materials Corp. v New York Power Auth.*, 13 NY3d 223; *Direen Operating Corp. v State Tax Commn.*, 46 AD2d 191.)

**OPINION OF THE COURT**

PIGOTT, J.

Petitioner New York State United Teachers (NYSUT) submitted requests under the Freedom of Information Law (FOIL) to the six respondent Charter Schools[1] seeking, among other things, payroll records showing the full names, titles, corresponding salaries, and home addresses of all persons employed as teachers, instructors and faculty (collectively referred to

---

1. Those charter schools are Brighter Choice, Henry Johnson, KIPP: Tech Valley, Albany Community, Albany Preparatory and Achievement Academy. None of the Charters Schools' teachers are members of a labor union.

hereafter as teachers). The Charter Schools partially denied the request, stating that full compliance would constitute an unwarranted invasion of personal privacy under Public Officers Law § 89 (2) (b).[2]

After its unsuccessful administrative appeals, NYSUT commenced these now-consolidated hybrid CPLR article 78/ declaratory judgment actions against the Charter Schools and their administrative officials seeking the teachers' names, titles and salaries, claiming that non-disclosure of such information was arbitrary, capricious and in violation of law. As relevant to this appeal, the Charter Schools asserted in their answers that they withheld portions of the requested information based on the commercial and fund-raising exemption of Public Officers Law § 89 (2) (b) (iii).

The parties agreed that the only remaining issue before Supreme Court was disclosure of the teachers' full names, the Charter Schools having agreed to provide the title and salary information. Supreme Court ordered the Charter Schools to disclose the names of their teachers and the Appellate Division unanimously affirmed, noting that although the Charter Schools submitted proof from which it could be inferred that NYSUT's intent was to solicit members, the Charter Schools were required to disclose the names for two reasons, first, because NYSUT dropped its request for home address information, and second, because the Charter Schools were required to keep basic employee information pursuant to Public Officers Law § 87 (3) (b) (64 AD3d 1130, 1131-1132 [3d Dept 2009]). We now reverse.

Charter schools are clearly subject to FOIL (*see* Education Law § 2854 [1] [e]), meaning that they must maintain "a record setting forth the name, public office address, title and salary of every officer or employee" (Public Officers Law § 87 [3] [b]). There is a presumption that such records must be made "available for public inspection and copying" (Public Officers Law § 87 [2]). There is an exception, however. Under Public Officers Law § 89 (2), an entity subject to FOIL may deny access to records that "if disclosed would constitute an unwarranted

---

2. The dissent erroneously relies on *Matter of West Harlem Bus. Group v Empire State Dev. Corp.* (13 NY3d 882 [2009]) in claiming that the Charter Schools did not articulate a particularized and specific justification for denying NYSUT access to the names (dissenting op at 568-569). Although, in a statement that can be considered only dicta, this Court in *West Harlem* criticized the records access officer for not complying with that standard, the Court upheld disclosure of the documents on a different ground (*see* 13 NY3d at 885).

invasion of personal privacy" (Public Officers Law § 87 [2] [b]), which, as relevant here, includes the "sale or release of lists of names and addresses if such lists would be used for commercial[3] or fund-raising purposes" (Public Officers Law § 89 [2] [b] [iii]).

In *Matter of Federation of N.Y. State Rifle & Pistol Clubs v New York City Police Dept.* (73 NY2d 92 [1989]), an organization requested the names and addresses of rifle and shotgun permit holders so it could mail them circulars describing its organization, its pursuits and the services it performed on behalf of its members, along with information concerning the organization's annual membership dues (*see id.* at 96). The organization did not dispute that its main reason for conducting the mailings was to obtain membership dues to support its activities, meaning that the purpose of the mailings was to raise funds. We rejected the organization's assertion that solicitation of funds to support an organization was distinctly different from a direct solicitation of contributions, noting that

> "[i]t is the purpose of the solicitation which matters, not what it is called, the manner or form in which it is presented to the solicitees, or the incidental benefits available to those who make a payment . . . If . . . dues received are intended to support the general activities of the organization and to further its over-all objectives, the solicitation activity is 'fund-raising' " (*id.* at 96-97).

Giving the term "fund-raising" its "natural and most obvious meaning" (*Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen,* 69 NY2d 246, 251 [1987]), it is evident that NYSUT's intent in requesting the teacher names is to expand its membership and, by extension, obtain membership dues. Counsel for NYSUT conceded as much during oral argument before Supreme Court.

We further note that ordering disclosure of the names would do nothing to further the policies of FOIL, which are to assist the public in formulating "intelligent, informed choices with respect to both the direction and scope of governmental activities" (*Matter of Fink v Lefkowitz,* 47 NY2d 567, 571 [1979]). If anything, "it is precisely *because* no governmental purpose is

---

3. This is the wording of the exemption at the time NYSUT made its FOIL requests. However, by the time the parties argued before Supreme Court, a statutory amendment had gone into effect and the word "commercial" had been replaced by the word "solicitation" (*see* L 2008, ch 223, § 4 [eff Aug. 6, 2008]). The parties do not contend that the amended language controls.

served by public disclosure" of this information that section 87 (2) (b)'s privacy exemption falls squarely within FOIL's statutory scheme (*Matter of Federation of N.Y. State Rifle & Pistol Clubs*, 73 NY2d at 97). There is no indication that NYSUT intends to use the names to, for example, expose governmental abuses or evaluate governmental activities. It appears, instead, that NYSUT seeks the teachers' names as a convenient mechanism for contacting prospective members. Although NYSUT certainly possesses a right to seek dues-paying members, it may not rely on FOIL to achieve that end.

The dissent notes the difference between *Federation* and this case, pointing out that the organization in *Federation* sought personal information about private citizens—as opposed to personal information about public citizens. But the exemption is blind to the distinction between the privacy of public employees and private citizens. Rather, it is the purpose for which the information is sought that drives the analysis.

The dissent's reliance on Education Law § 2854 (3) (c-1) (i)[4] is similarly misplaced (dissenting op at 568); the issue before us is whether the Charter Schools must disclose the teachers' names pursuant to FOIL, not whether the Charter Schools are denying NYSUT access to school employees. Merely because charter schools must afford employee organizations access under the Education Law, it does not follow that the employee organizations may circumvent the FOIL exemptions in achieving those ends. Nor, as the dissent suggests, does Public Officers Law § 89 (7) mandate presumptive disclosure of employee records (dissenting op at 569); that provision permits disclosure of *names* if "otherwise available under [FOIL]."

Contrary to the holding of the Appellate Division, the fact that the Charter Schools must comply with the mandates of section 87 (3) (b) does not imply that they must, ipso facto, disclose that information without first considering whether it falls within a denoted exemption; FOIL clearly states that an agency must make records (or portions thereof) available for public inspection and copying unless the disclosure would constitute an unwarranted invasion of personal privacy under section 89 (2) (*see* Public Officers Law § 87 [2]). Simply because the record

---

4. Education Law § 2854 (3) (c-1) (i) states: "If employees of the charter school are not represented, any charter school chartered pursuant to this article [article 56: 'Charter Schools'] must afford reasonable access to any employee organization during the reasonable proximate period before any representation question is raised."

is required to be *maintained* under section 87 (3) (b) does not mean that it must be *disclosed*, particularly in circumstances where an exemption applies.

Nor is there merit to NYSUT's contention that it is entitled to the teachers' names because it dropped its request for "names *and* addresses" and seeks only the names. Section 89 (2) (b) (iii) would have little meaning if entities could circumvent the fundraising exemption by gaining access to only the names and then linking them to a home address. The policy concerns underlying the personal privacy exemption are no less implicated under that scenario.

Accordingly, the order of the Appellate Division should be reversed, with costs, and that part of the petition seeking disclosure of the names of the teachers employed by the Charter Schools should be denied.

CIPARICK, J. (dissenting). Because I believe the information requested by New York State United Teachers (NYSUT) was required to be disclosed by the Freedom of Information Law (FOIL), I respectfully dissent.

When it enacted the Charter Schools Act in 1998, the Legislature specifically subjected charter schools to FOIL (*see* Education Law § 2854 [1] [e] ["charter school(s) shall be subject to the provisions of articles six (FOIL) and seven (Open Meetings Law) of the public officers law"]). Thus, for FOIL purposes, a charter school is equivalent to any public agency or public school.

FOIL "provides the public with broad access to the records of government" (*Matter of Data Tree, LLC v Romaine*, 9 NY3d 454, 462 [2007] [internal quotation marks and citation omitted]). An agency must make available for public inspection and copying all records unless the agency can establish that a particular request falls squarely within one of FOIL's specifically enumerated categories of materials exempted from disclosure (*see id.*; *see also Matter of Scott, Sardano & Pomeranz v Records Access Officer of City of Syracuse*, 65 NY2d 294, 296-297 [1985]). Although FOIL generally does not require that an agency subject thereto create records other than those generated in the normal course of agency business (Public Officers Law § 87 [3]), it does require that each agency maintain "a record setting forth the name, public office address, title and salary of every officer or employee of the agency" (Public Officers Law § 87 [3] [b]).

To effectuate FOIL's overriding policy—which is that "the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government" (*Matter of Fink v Lefkowitz*, 47 NY2d 567, 571 [1979]; *see also* Public Officers Law § 84)—the enumerated list of records exempt from FOIL disclosure is interpreted narrowly (*see Matter of Russo v Nassau County Community Coll.*, 81 NY2d 690, 697 [1993]). Moreover, the burden for establishing the applicability of an exemption rests on the agency, which must "articulat[e] a particularized and specific justification for denying access" to the requested documents (*Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d 562, 566 [1986]; *see also Matter of West Harlem Bus. Group v Empire State Dev. Corp.*, 13 NY3d 882, 885 [2009]).

As relevant here, FOIL exempts from disclosure "records or portions thereof that . . . if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article" (Public Officers Law § 87 [2] [b]). Section 89 states that "[a]n unwarranted invasion of personal privacy includes" the "sale or release of lists of names and addresses if such lists would be used for commercial[*] or fund-raising purposes" (Public Officers Law § 89 [2] [b] [iii]).

The majority, relying on *Matter of Federation of N.Y. State Rifle & Pistol Clubs v New York City Police Dept.* (73 NY2d 92 [1989]), concludes that "NYSUT's intent in requesting the teacher names [was] to expand its membership and, by extension, obtain membership dues" and, therefore, the release of teacher names requested by NYSUT was justifiably denied as an unwarranted invasion of personal privacy (majority op at 564). I disagree.

In the *Federation* case, as the majority explains, an organization sought the names and addresses of citizens holding rifle and shotgun permits (*see* 73 NY2d at 94). The purpose of the request was to send those permit holders information on the organization, including information about the organization's annual membership rates (*see id.* at 96). Because the organization did not dispute that the purpose of its mailings was to solicit new members and thereby receive funding, we concluded that

---

* As the majority notes, the statute has been amended to replace "commercial" with "solicitation"; the older version of the statute is at issue here (*see* majority op at 564 n 3).

the FOIL request for permit holders' names and addresses was properly denied under the fund-raising exemption (*see id.* at 96-97). Specifically, we observed that "direct-mail membership solicitation [as] proposed [by the Federation] would constitute 'fund-raising' if that term is given its natural and most obvious meaning" (*id.* at 96).

However, we also noted in the *Federation* case: "It is precisely *because* no governmental purpose is served by public disclosure of certain *personal information about private citizens* that the privacy exemption of section 87 (2) (b) fits comfortably within FOIL's statutory scheme" (*id.* at 97 [some emphasis added]). Two important points follow from this statement, which distinguish *Federation* from this case. First, here, the public disclosure of personal information is not about private citizens, but about public employees—employees for whom charter schools are specifically required by FOIL to maintain certain information (*see* Public Officers Law § 87 [3] [b]; *see also* Education Law § 2854 [1] [e]).

Second, there is unquestionably a public purpose served by permitting NYSUT to obtain the names of charter school teachers: there is a strong public policy, embodied in the Taylor Law (Civil Service Law art 14), in favor of organization and collective bargaining by public employees (*see also* NY Const, art I, § 17 ["Employees shall have the right to organize and to bargain collectively through representatives of their own choosing"]). Rather than negating that public policy in the creation of charter schools, the Legislature reinforced it (*see* Education Law § 2854 [3] [c-1] [i] ["If employees of the charter school are not represented, any charter school chartered pursuant to this article must afford *reasonable access* to any employee organization during the reasonable proximate period before any representation question is raised" (emphasis added)]; *see also* Education Law § 2854 [3] [c-2] [subjecting charter schools to the employer neutrality provisions of the Civil Service Law]). For these reasons, *Federation* is distinguishable from this case and the majority's reliance on it is misplaced.

Additionally, the charter schools failed to carry their burden to "articulat[e] a particularized and specific justification for denying access" to the requested documents (*Matter of Capital Newspapers*, 67 NY2d at 566; *West Harlem*, 13 NY3d at 885; *see also Data Tree*, 9 NY3d at 462-463). In *West Harlem*, the records access officer for the Empire State Development Corporation (ESDC) relied on the statutory language of Public Officers

Law § 87 (2) (c) as the basis for denying the West Harlem Business Group's (WHBG) request for certain records, and ESDC's appeals officer "merely parroted the same language" in a letter denying the appeal (13 NY3d at 884). We concluded that this, without more, constituted a failure by ESDC to "fully explain in writing" to WHBG the reasons for further denial as required by FOIL (*id.* at 885, quoting Public Officers Law § 89 [4] [a]). We ultimately held that ESDC had "failed to meet its burden of proof relative to the exemptions" it sought to invoke to deny disclosure, thereby justifying Supreme Court's decision to order the documents released (*id.* at 886). Here, as in *West Harlem*, the charter schools initially denied NYSUT's request by invoking the statutory language of Public Officers Law § 89 (2) (b), stating that the disclosure of the information sought "would constitute an unwarranted invasion of personal privacy." Each of the schools used identical language in denying the initial FOIL request. Moreover, the record reflects that, to the extent the charter schools responded to NYSUT's appeal of the initial denials, they "merely parroted the same language" in their response. The charter schools first invoked the specific exemption for fund-raising during the course of this CPLR article 78 proceeding, in response to NYSUT's petition. It is unclear why the majority excuses this failure by the charter schools when we did not excuse the failure of ESDC in *West Harlem* on virtually identical facts.

In short, the majority's reliance on *Federation* is misplaced and, in any event, the charter schools' failure to articulate a specific reason for the denial of NYSUT's request constituted a sufficient basis for the courts below to conclude that the requested information was not exempt under the personal privacy/fund-raising exemption. Aside from ignoring that the charter schools failed to meet their burden of justifying their decision to withhold information, the majority has, in effect, created a rule that unions and other organizations that rely on membership dues can never obtain the names of public employees, because such organizations may, at some future time, seek dues-paying members. This is particularly troublesome in a case, such as this, where a union, which should be afforded "reasonable access" to public employee records (Education Law § 2854 [3] [c-1] [i]; Public Officers Law § 89 [7]), is denied such access under the guise of the fund-raising exemption. For these reasons, I respectfully dissent.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge CIPARICK dissents in a separate opinion in which Chief Judge LIPPMAN and Judge JONES concur.

Order reversed, etc.