Matter of Hepps v New York State Dept. of Health (2020 NY Slip Op 02517)





Matter of Hepps v New York State Dept. of Health


2020 NY Slip Op 02517


Decided on April 30, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 30, 2020

529148

[*1]In the Matter of Tammy A. Hepps et al., Respondents- Appellants,
v
New York State Department of Health, Appellant- Respondent.

Calendar Date: February 21, 2020

Before: Egan Jr., J.P., Lynch, Devine, Aarons and Colangelo, JJ.


Letitia James, Attorney General, Albany (Robert M. Goldfarb of counsel), for appellant-respondent.
Beldock Levine & Hoffman LLP, New York City (David B. Rankin of counsel), for respondents-appellants.



Colangelo, J.
Cross appeals from a judgment of the Supreme Court (McGrath, J.), entered April 1, 2019 in Albany County, which partially granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent partially denying petitioners' Freedom of Information Law requests.
Petitioner Reclaim the Records is a not-for-profit
"genealogical advocacy organization" that seeks to facilitate free access to documents for those interested in genealogy and history. Petitioner Brooke Ganz, Reclaim's president, and petitioner Tammy A. Hepps, its treasurer, filed separate, overlapping Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) requests on behalf of Reclaim. Ganz submitted the initial FOIL request in September 2017, seeking "a copy of the New York State marriage index, from 1881 (or as early as such records are available) through December 31, 2016, inclusive," and clarified that the "request [was] for the basic index only," and she was not requesting marriage certificates or licenses. That request for records "in raw database format" and on a "USB hard drive" made clear that the information would "be scanned and uploaded to the Internet" and made "freely available to the general public but not for commercial purposes. Respondent acknowledged the request and, in February 2018, provided Ganz with responsive documents dating back to 1881 and up through December 31, 1965,[FN1] but excluded records from the most recent 50 years of marriage indices. Ganz's administrative appeal was denied on the basis that, as is pertinent here, the recent indices (after 1965) were properly excluded from FOIL disclosure under the personal privacy exemption (see Public Officers Law § 87 [2] [b]) and under the governing regulations precluding respondent from releasing marital records for 50 years (see 10 NYCRR 35.5 [c] [4]).[FN2]
In July 2018, Hepps filed an overlapping FOIL request on Reclaim's behalf again seeking the marriage indices withheld for the years 1967 through 2017 and, receiving no acknowledgement, filed an administrative appeal. Respondent answered two days later in a written letter declining to consider the request as "duplicative" of the first request that had already been administratively addressed.
Petitioners commenced this CPLR article 78 proceeding to annul respondent's determination partially denying their FOIL requests, seeking disclosure of the 1967 through 2017 marriage indices in a searchable database, and requesting counsel fees and costs. Respondent answered, contending, as relevant here, that the indices from the most recent 50 years are exempt from disclosure pursuant to Public Officers Law § 87 (2) on several grounds, including that their disclosure would constitute an unwarranted invasion of personal privacy. Supreme Court determined that the most recent 50 years of marriage indices were not generally exempt from disclosure, and directed their disclosure, but ordered the redaction of Social Security numbers and dates of birth prior to disclosure, as such information would constitute an unwarranted invasion of personal privacy.[FN3] The court denied petitioners' request for counsel fees and costs. Respondent appeals and petitioners cross-appeal.
Respondent's appeal presents the issue of whether the requested personal information regarding the most recent 50 years of marriages in this state, between 1967 and 2017, as indexed and maintained by respondent, is subject to disclosure under FOIL to assist in genealogical research, or is exempt from disclosure, in whole or in part. In our view, respondent has demonstrated that the requested disclosure of this personal information would constitute an "unwarranted invasion of personal privacy" (Public Officers Law §§ 87 [2] [b]; 89 [2] [b]) and is, thus, exempt.
By statute, town and city clerks [FN4] empowered to issue marriage licenses are required to keep a book supplied by respondent in which they record and index prescribed information pertaining to marriages, which is kept as part of the "public records" (Domestic Relations Law § 19 [1]). Further, the affidavits, statements and consents submitted to the clerks as part of the marriage license process must also be recorded and indexed; those documents are "public records" that are "open to public inspection" subject to an important caveat — there must first be a showing that such disclosure is "necessary or required for judicial or other proper purposes" (Domestic Relations Law § 19 [1]; see Domestic Relations Law § 15 [1] [a]). The town and city clerks are required to file with respondent the original "affidavit, statement, consent, [court] order . . . license and certificate" (Domestic Relations Law § 19 [1]) and, upon receipt by respondent of such records, the originals "shall be kept on file and properly indexed by [respondent]" (Domestic Relations Law § 20). Petitioners' FOIL requests indicate their intent to upload the foregoing personal marital information on the Internet and that they anticipate that the records will be converted into a text-searchable database and made available for free to the public for genealogical and historical research.
"FOIL imposes a broad duty of disclosure on government agencies" and "[a]ll agency records are presumptively available for public inspection and copying" unless one of the statutory exemptions applies, permitting the agency to withhold the records (Matter of Hanig v State of N.Y. Dept. of Motor Vehs., 79 NY2d 106, 109 [1992] [citations omitted], citing Public Officers Law §§ 84, 87 [2]; see Matter of Gould v New York City Police Dept., 89 NY2d 267, 274-275 [1996]; Matter of Police Benevolent Assn. of N.Y State, Inc. v State of New York, 165 AD3d 1434, 1435 [2018]; Matter of Laveck v Village Bd. of Trustees of Vil. of Lansing, 145 AD3d 1168, 1169 [2016]). The exemptions are "narrowly construed," with the burden on respondent to demonstrate that an exemption applies (Matter of Hanig v State of N.Y. Dept. of Motor Vehs., 79 NY2d at 109; see Public Officers Law § 89 [4] [b]; Matter of McFadden v Fonda, 148 AD3d 1430, 1432 [2017]). "[T]o invoke one of the exemptions of [Public Officers Law §] 87 (2), the agency must articulate particularized and specific justification for not disclosing requested documents" (Matter of Gould v New York City Police Dept., 89 NY2d at 275 [internal quotation marks and citation omitted]; see Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462-463 [2007]; Matter of Police Benevolent Assn. of N.Y. State, Inc. v State of New York, 145 AD3d 1391, 1392 [2016]).
Against that backdrop, an agency may decline disclosure of records which, "if disclosed[,] would constitute an unwarranted invasion of personal privacy" (Public Officers Law § 87 [2] [b]). "Th[is] personal privacy exemption incorporates a nonexhaustive list of categories of information that [the Legislature has determined] would statutorily constitute unwarranted invasions of personal privacy if disclosed, such as employment histories" and medical or credit histories (Matter of Police Benevolent Assn. of State of N.Y., Inc. v State of New York, 165 AD3d at 1435, citing Public Officers Law § 89 [2] [b]; see Matter of Data Tree, LLC v Romaine, 9 NY3d at 462; Matter of Hanig v State of N.Y. Dept. of Motor Vehs., 79 NY2d at 109-110). We find that the information requested here does not fall squarely into any of the specifically enumerated categories of exempt personal information (see Matter of Laveck v Village Bd. of Trustees of Vil. of Lansing, 145 AD3d at 1170). Accordingly, "the issue of whether there is an 'unwarranted invasion' of privacy is decided 'by balancing the privacy interests at stake against the public interest in disclosure of the information'" (Matter of Massaro v New York State Thruway Auth., 111 AD3d 1001, 1002 [2013], quoting Matter of New York Times Co. v City of N.Y. Fire Dept., 4 NY3d 477, 485 [2005]; see Matter of Harbatkin v New York City Dept. of Records & Info. Servs., 19 NY3d 373, 380 [2012]; Matter of Laveck v Village Bd. of Trustees of Vil. of Lansing, 145 AD3d at 1170). Notably, "what constitutes an unwarranted invasion of personal privacy is measured by what would be offensive and objectionable to a reasonable person of ordinary sensibilities" (Matter of Ruberti, Girvin & Ferlazzo v New York State Div. of State Police, 218 AD2d 494, 498 [1996] [internal quotation marks, brackets and citation omitted]; see Matter of Massaro v New York State Thruway Auth., 111 AD3d at 1003).
We assume that petitioners' stated purpose in obtaining marriage indices — to publish the records and enable the creation of a searchable database free on the Internet for genealogical research — is a legitimate public interest. We are mindful, however, of the underlying purpose of FOIL — to promote transparency in governmental operations so that the "process of governmental decision making" is on public display and governmental actions can be more readily scrutinized (Public Officers Law § 84). It is difficult to fathom how this fundamental and salutary objective will be furthered by the release of the information sought by petitioners. Indeed, in balancing the privacy and public interests at stake, contrary to the conclusion reached by Supreme Court, we find that respondent has demonstrated that compelling privacy interests are implicated in the disclosure of personal information related to recent marriages of private persons and, further, that these interests carry more weight than the public interest that would be served by disclosure (see Matter of New York Times Co. v City of N.Y. Fire Dept., 4 NY3d at 484-486; cf. Matter of Harbatkin v New York City Dept. of Records & Info. Servs., 19 NY3d at 380; Matter of McFadden v Fonda, 148 AD3d at 1433; Matter of Laveck v Village Bd. of Trustees of Vil. of Lansing, 145 AD3d at 1170; Matter of Livson v Town of Greenburgh, 141 AD3d 658, 661 [2016]; Matter of Humane Socy. of US v Fanslau, 54 AD3d 537, 538-539 [2008]).[FN5]
According to respondent's Director of the Bureau of Vital Statistics, Robert Jake Locicero, who oversees the maintenance of and requests for vital records, the indices created from these documents dating back to the 1800s differ in format [FN6] and content, depending upon the year, and contain a variety of personal information, expanded over the years, regarding married persons. The most recent records include information regarding full names, prior ("maiden") names, date and county of marriage, number of prior marriages, date and place of birth, Social Security number, age and gender [FN7] (see Domestic Relations Law § 15 [1]). Locicero opined that there was a "high probability" that disclosure of the records, in combination with other publicly available information and details acquired through large-scale data breaches, would facilitate various types of identity theft, account hacking and the creation of fake identities, which has "increased significantly" with technological advancements.[FN8] He noted that the privacy concerns and dangers were greater with regard to more recent marital records, which would likely contain more accurate and current information. Locicero further explained that disclosure of the marital information would give rise to significant and even greater privacy and other concerns for married transgender and transitioning persons, couples in same-sex marriages, victims of domestic violence and for those who married as minors.[FN9] Moreover, Locicero explained that many of the records are not in electronic format or are incomplete, and they could not be easily redacted, an extensive process that would require hiring an outside vendor. In denying disclosure as to the more recent marriage indices, respondent's FOIL appeals officer concluded that "the unintended consequences of [the requested] release would [be to] provide the means for the most virulent form of unwarranted invasions of personal privacy from identity thieves and data brokers," and that "[e]ven the release of limited information would allow these thieves to use other data they possess to extrapolate from these records and pin-point the identifying characteristics of individuals from whom they wish to phish or plunder." Further, the FOIL appeals officer found that "there are no possible safeguards [to ensure] that the records will not wind-up in the hands of hackers globally." We reject petitioners' contentions that these substantial concerns are speculative or unsupported in the record.[FN10]
Petitioners have not shown that the requested disclosure is required to serve the public interest and, more to the point, respondent has persuasively demonstrated that such disclosure "would be offensive and objectionable to a reasonable person of ordinary sensibilities" whose personal, marital information would be disclosed and published (Matter of Ruberti, Girvin & Ferlazzo v New York State Div. of Police, 218 AD2d at 498 [internal quotation marks, brackets and citation omitted]; see Matter of New York Times Co. v City of N.Y. Fire Dept., 4 NY3d at 486-487; cf. Matter of McFadden v Fonda, 148 AD3d at 1433). We are persuaded that marrying parties — private persons — had every expectation that their personal information, although required to obtain a license to marry, would not be provided to third parties to be published in a searchable database on the Internet available worldwide (cf. Matter of Laveck v Village Bd. of Trustees of the Vil. of Lansing, 145 AD3d at 1170). Indeed, the Internet was not even widely available until recent decades, and parties marrying in the 1960s through the 1990s could not have even imagined this widescale dissemination of their personal information in this manner.[FN11] In this "Age of the Internet," however, even if only the names of the married couples were released, "all one would need is an Internet connection to determine where they live and work" (Matter of Bellamy v New York City Police Dept., 87 AD3d 874, 875 [2011], affd 20 NY3d 1028 [2013]).
Where, as here, legitimate concerns regarding personal privacy and the very real threat of identity theft are raised, it has long been understood that "[t]here is a difference between an electronic compilation in searchable form and records that can only be found by a diligent search through scattered files. The former presents a far greater threat to privacy" (Matter of Goyer v New York State Dept. of Envtl. Conservation, 12 Misc 3d 261, 274 [Sup Ct, Albany County 2005] [internal quotation marks and citation omitted]). The ubiquitous global Internet requires a different, more cautious analysis in addressing requests for the wholesale disclosure of personal information about private citizens on this scale. Although petitioners rely heavily on the fact that similar requests have previously been granted, as respondent's FOIL appeals officer aptly noted, "[a]n agency that has provided such records in the past is not estopped from increasing its safeguards in the face of a newly-comprehended threat."[FN12]
In our view, respondent has satisfied its burden of showing that the requested information falls within this privacy exemption "by articulating a particularized and specific justification for denying access" (Matter of Data Tree, LLC v Romaine, 9 NY3d at 463 [internal quotation marks and citation omitted]; cf. Matter of McFadden v Fonda, 148 AD3d 1432; Matter of Laveck v Village Bd. of Trustees of the Vil. of Lansing, 145 AD3d at 1170). Although individual marriage records are public, there is a material difference between providing access to individual records on a demonstration of need (see Domestic Relations Law § 19 [1]) and providing 50 years' worth of recent marital indices to publish on the Internet. According this personal privacy exemption its "natural and [most] obvious meaning" (Matter of Federation of N.Y State Rifle & Pistol Clubs v New York City Police Dept., 73 NY2d 92, 96 [1989]; accord Matter of New York United Teachers v Brighter Choice Charter School, 15 NY3d 560, 564 [2010]), we conclude that it applies to the recent records sought from respondent here.
Moreover, disclosure of the records sought does not further the purposes of FOIL, which is to ensure access to information regarding "the process of governmental decision-making and to review documents and statistics leading to [governmental] determinations" (Public Officers Law § 84), i.e., "to assist the public in formulating intelligent, informed choices with respect to both the direction and scope of governmental activities" (Matter of New York United Teachers v Brighter Choice Charter School, 15 NY3d at 564 [internal quotation marks and citation omitted]). Wholesale disclosure of more recent indexed marriage information has not been shown to reflect government decision-making, policy or activities within the intendment of FOIL and, thus, it would not further its policies. Indeed, petitioners do not seek the information to "expose governmental abuses or evaluate governmental activities," decisions or expenditures (id. at 565) or "to hold the govern[ment] accountable to the governed" (Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979] [internal quotation marks and citation omitted]; cf. Matter of Empire Realty Corp. v New York State Div. of Lottery, 230 AD2d 270, 273 [1997]) but, rather, to provide convenient, Internet-searchable access to genealogical records. Petitioners do not even argue that disclosure here would promote the objectives of FOIL. "[I]t is precisely because no governmental purpose is served by public disclosure of certain personal information about private citizens that the privacy exemption" exists (Matter of Federation of N.Y State Rifle & Pistol Clubs v New York City Police Dept., 73 NY2d at 97 [emphasis omitted]).
In view of the mischief that the wholesale release of this information is likely to cause, the "public" interest that presumably would be served by sanctioning its use pales in comparison. The prospect of such clear and potential danger is evident both from the record herein and our common experience. Who among us, in applying for a loan, a bank account or a credit card, has not been asked for our mother's "maiden" name, or been directed to devise or change a password the creation of which called for information such as a town of origin, wedding anniversary, first school attended and the like. As Locicero makes clear, such specific identifying facts could readily be gleaned, with a few strokes of a keyboard, from the record indices that petitioners would, upon receipt, make available to the world. In contrast, the "public interest" that would presumably be served by such mass disclosure, as articulated by petitioners, is to, in essence, assist certain members of the public in their pursuit of what is essentially a hobby. In short, in this Internet age, the potential for harm to thousands of private citizens from the disclosure of the personal information at issue far outweighs the presumed benefit to a few genealogical enthusiasts. Thus, under these circumstances, nondisclosure and application of the personal privacy exemption is, we believe, "consistent with the legislative intent and with the general purpose and manifest policy underlying FOIL" (Matter of Hanig v State of N.Y. Dept. of Motor Vehs., 79 NY2d at 110 [internal quotation marks and citation omitted]).
Finally, contrary to petitioners' strenuous assertions, we are not persuaded that a contrary result is warranted by the decision in Matter of Gannett Co. v City Clerk's Off. (157 Misc 2d 349, 351-352 [Sup Ct, Monroe County 1993], affd on opn below 197 AD2d 919 [1993]). That decision required a city clerk to disclose to a journalistic organization the names of couples to whom a marriage license had been issued for local newspaper publication. Significantly, the trial court found that no factual showing had been made that the release of the names would intrude upon the applicants' personal privacy, and the decision was limited to the disclosure of names without any personal information, which the court found did not fall under the personal privacy exemption. Furthermore, the decision was made 27 years ago, well before the Internet became a ubiquitous part of and revolutionized our lives, making global access to our personal information instantly available and paving the way for identity theft and other compelling privacy and security concerns. Given our conclusion, we need not address respondent's remaining arguments that the requested information was also exempt under other statutory provisions.
Addressing petitioners' cross appeal, we find no abuse of discretion in Supreme Court's denial of counsel fees under Public Officers Law § 89 (4) (c) (see Matter of Utility Rate Analysis Consultants [URAC] Corp. v Public Serv. Commn. of the State of N.Y., 171 AD3d 1279, 1280-1281 [2019]). Although petitioners arguably "substantially prevailed" in the FOIL proceeding before that court, they failed to establish that respondent "either lacked a reasonable basis for denying access to the requested records or 'failed to respond to [their] request or appeal within the statutory time'" (Matter of Madeiros v New York State Educ. Dept., 30 NY3d 67, 78—79 [2017], quoting Public Officers Law § 89 [4] [c] [i], [ii]; see Matter of Gannett Satellite Info. Network, LLC v New York State Thruway Auth., 181 AD3d 1072, ___, 2020 NY Slip Op 01680, *2 [2020]). Indeed, we find that respondent properly denied the FOIL request with regard to the most recent 50 years and, thus, that respondent had a reasonable basis for denying access to these records. Accordingly, we discern no basis upon which to disturb the denial of counsel fees.
Egan Jr., J.P., Lynch, Devine and Aarons, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as partially granted petitioners' application; said application dismissed in its entirety; and, as so modified, affirmed.



Footnotes

Footnote 1: Respondent admittedly had inadvertently omitted the records for 1964 and was later in the process of compiling those records to release to petitioners.

Footnote 2: Respondent's Records Access Appeals Officer also concluded that the recent records were exempt because disclosure could endanger personal safety and such records are specifically exempt by statute (see Public Officers Law § 87 [2] [a], [f]; 10 NYCRR 35.5 [c] [4]).

Footnote 3: Supreme Court determined that this CPLR article 78 proceeding was timely commenced with regard to the first FOIL request, a ruling not challenged on appeal. Although the second request overlapped the first request, the requests were made separately by Hepps and Ganz, albeit as officers of and on behalf of Reclaim, and the FOIL administrative appeals officer declined to consider the second request as duplicative of the first. Nevertheless, Supreme Court addressed the requests together when considering petitioners' entitlement to the most recent 50 years of marriage indices, and no objections are raised on appeal to this approach. Thus, we likewise address the requests together, as one.

Footnote 4: This statutory discussion refers to marriage licenses issued outside of New York City.

Footnote 5: Because the marriage indices contain "information kept [or] held . . . for an agency," they are records available under FOIL (Public Officers Law § 86 [4]; see Matter of Gould v New York City Police Dept., 89 NY2d at 278).

Footnote 6: Depending upon the year, some of the more recent records (1966 through 2005) are maintained in books or on microfiche and are in the process of being converted to spreadsheets and databases, although this conversion is years away from completion; some are partially converted to electronic databases (2006) and, beginning in 2007, they were stored for the first time in electronic databases.

Footnote 7: Respondent did not make, and the record does not reflect that petitioners requested, an offer of proof or seek an in camera inspection of the electronic indices or sample pages reflecting the content or format thereof.

Footnote 8: The Legislature created a separate crime for identity theft in 2002 (see Penal Law § 190.77 et seq.), describing it as "one of the fastest growing financial crimes," which the Court of Appeals explained was based upon "a growing awareness across the country and in New York of the ease with which personal information can be obtained through the use of technology and by access to the Internet, and that confidential data was vulnerable to computer security system breaches" (People v Roberts, 31 NY3d 406, 416 [2018] [internal quotation marks and citations omitted]). The Court emphasized that this "increased unauthorized use of individuals' personal information caused significant financial harm to victims, who were often unaware that their information had been stolen until they received debt collection notices or discovered their credit ratings had been ruined" (id. at 416 [internal quotation marks and citations omitted]).

Footnote 9: "Until July 20, 2017, New York permitted minors between the ages of 16 and 18 to marry with parental consent and minors between the ages of 14 and 16 to marry with parental consent and judicial approval" (Alan D. Scheinkman, 2017 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 15, C15:3, 2019 Pocket Part at 61-62). As of that date, marriages of minors under 17 years of age are prohibited (see Domestic Relations Law §§ 15 [3]; 15-a).

Footnote 10: Notably, respondent's regulation, in effect since 1988, provides that information regarding marriages, births and deaths may be requested for genealogical research purposes, subject to certain limitations. The restrictions include, as relevant here, that "no information shall be released from a record of marriage unless the record has been on file for at least 50 years and the parties to the marriage are known to the applicants to be deceased" (10 NYCRR 35.5 [c] [4] [emphasis added]). The FOIL appeals officer also expressly relied on this provision, among others, in denying marital records for the most recent 50 years. Although we need not decide whether this regulation constitutes a specific exemption under Public Officers Law § 87 (2) (a) — Supreme Court concluded that it was inapplicable in that it was not a statute — we note that respondent's qualified disclosure here is consistent with that provision.

Footnote 11: We find that there is no question of fact presented here as to whether the records requested contain private information (see Domestic Relations Law § 15 [1]). Although "deletion of identifying details" from records disclosed is permitted to avoid the unwarranted invasion of privacy (Public Officers Law § 89 [2] [a]; see Public Officers Law § 89 [2] [c] [i]; Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills, 18 NY3d 42, 45-46 [2011]), respondent has persuasively demonstrated that no amount of redaction could cure the personal privacy concerns and the unwarranted invasion of the privacy of the persons whose marital information would be disclosed in this manner (cf. Matter of Data Tree, LLC v Romaine, 9 NY3d at 465-466). Moreover, respondent has also established that "such [private] information cannot be reasonably redacted from [its] electronic records" and, thus, such records are "not . . . subject to disclosure under FOIL" (id. at 466).

Footnote 12: We express no opinion regarding the prior disclosure of marital records from New York City pursuant to a stipulation to which respondent was not a party, which is not before us. We further note that advisory opinions from the Committee on Open Government "are not binding authority" although "they may be considered to be persuasive based on the strength of their reasoning and analysis" (Matter of Pflaum v Grattan, 116 AD3d 1103, 1105 n [2014] [internal quotation marks and citation omitted]; see Matter of Hayes v Chestertown Volunteer Fire Co., Inc., 93 AD3d 1117, 1121 n 2 [2012]). However, we are not persuaded by the reasoning of the advisory opinions on which petitioners rely, which did not address most of the current Internet, identity theft-related concerns relevant to this requested disclosure (see Comm on Open Govt FOIL-AO-10608 [1998]; Comm on Open Govt FOIL-AO-10339 [1997]).