■ EUGENE A. STREIPS, Appellant, v LTV CORP. et al., Respondents. [629 NYS2d 132] —Order affirmed without costs. Memorandum: Plaintiff commenced this action for libel based upon the circulation of a memorandum announcing his suspen-

sion from employment with defendant Sierra Research Division (Sierra), a subsidiary of defendant LTV Corp. The memorandum, which was posted on employee bulletin boards, stated:

"TO ALL EMPLOYEES:

"As some of you may be aware, the Federal Government currently is conducting a review of certain Sierra programs. Pending resolution of this activity, Tom Cobb, Stu Penny, Roger Witt, Gene Streips and Jack Borkowski have been suspended from their duties at Sierra, effective immediately. These suspensions are with pay and are not intended to prejudge any involvement of these individuals in the matters being reviewed by the Government or constitute any final determination regarding their employment status with Sierra.

"To ensure that Sierra continues to operate smoothly, I will assume Tom Cobb's responsibilities. Those of you who have been reporting to Tom will now report to me. John Buck will act for me when I am absent from Sierra. Other necessary responsibilities will be assigned next week.

"The company will implement any additional measures necessary for the successful performance of Sierra's ongoing obligations."

We conclude that the intended readers of that announcement, the Sierra employees, would not attribute any defamatory meaning to the simple factual statement that certain employees had been suspended with pay during an ongoing review of Sierra's operations by Federal officials. The announcement unambiguously informed a specialized audience that the suspensions were not to be considered a prejudgment that any of the suspended employees had been involved in matters under review. That audience, upon reading the entire announcement in context, could not attribute any defamatory meaning to that factual statement (see, Bernhard v UBAF Arab Am. Bank, 159 AD2d 232).

The dissent's reliance upon Carney v Memorial Hosp. & Nursing Home (64 NY2d 770) is misplaced. In Carney, the statement made to the newspaper media revealed that plaintiff had been dismissed "for cause" (supra, at 772). The Court of Appeals held that the average reader could interpret that statement "as meaning that plaintiff had actually been derelict in his professional duties" (Carney v Memorial Hosp. & Nursing Home, supra, at 772). The announcement by Sierra carefully advised the reader that no determination had been made concerning whether "cause" existed for the suspensions.

All concur except Boehm, J., who dissents in part and votes to modify in the following Memorandum.

Boehm, J. (dissenting in part). Defendants moved to dismiss the complaint, contending, *inter alia,* that the memorandum was not susceptible of a defamatory interpretation. Supreme Court, *inter alia,* granted defendants' motion to dismiss, holding that the memorandum contained mere statements of fact with no defamatory meaning. I disagree and, therefore, respectfully dissent in part.

A writing is defamatory " ' "if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number in the community, even though it may impute no moral turpitude to him" * * * [or if it] tends to disparage a person in the way of his office, profession or trade' " *(Tracy v Newsday, Inc.,* 5 NY2d 134, 135-136, quoting *Nichols v Item Publs.,* 309 NY 596, 600-601). Whether a particular statement is susceptible of a defamatory meaning is, in the first instance, a legal question to be determined by the court *(Tracy v Newsday, Inc., supra,* at 136; *Cappellino v Rite-Aid of N. Y.,* 152 AD2d 934, 935). In making that determination, the threshold standard to be applied is "[w]hether the contested statements are reasonably susceptible of a defamatory connotation" *(Weiner v Doubleday & Co.,* 74 NY2d 586, 592, *cert denied* 495 US 930). The words should "be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed [citation omitted]" *(November v Time Inc.,* 13 NY2d 175, 178-179; *see, Sydney v MacFadden Newspaper Publ. Corp.,* 242 NY 208, 214; *Kraus v Brandstetter,* 167 AD2d 445, 446).

When read separately, the statements in the memorandum may be true and non-defamatory; it is their conjunction that creates the potential harm. The memorandum announcing plaintiff's suspension may reasonably be read to suggest that plaintiff's misconduct was responsible for the Federal investigation. That interpretation does not strain the meaning of the language, but would be a natural implication from the words, as linked, in the minds of the intended audience, defendants' employees *(see, Balabanoff v Hearst Consol. Publs.,* 294 NY 351, 355, quoting Restatement of Torts § 563 [d] [" 'words which alone are innocent may in their context clearly be capable of a defamatory meaning and may be so understood' "]). We are not constrained to read the memorandum in its literal sense, but may consider the meaning "which a reader might not irrationally attach to the article as written" *(November v Time Inc., supra,* at 179). The implication that plaintiff was guilty of misconduct that led to the Federal investigation is

one that the average reader might well attribute to the memorandum in the context in which it is written. The bare disclaimer that defendants had not prejudged plaintiff does not necessarily erase that defamatory implication. "The publisher of a libel may not * * * escape liability by veiling a calumny under artful or ambiguous phrases and, if any common-sense construction of what was written justifies or supports a defamatory meaning, it will be for the jury, not the court on motion, to decide whether the writing was or was not defamatory. (See *Mencher* v. *Chesley,* * * * 297 N. Y. 94, 102.)" *(Nichols v Item Publs., supra,* at 601).

The memorandum may reasonably be construed as defaming plaintiff *(see, Carney v Memorial Hosp. & Nursing Home,* 64 NY2d 770), and in the present procedural posture that is all that plaintiff need show *(see, Gross v New York Times Co.,* 82 NY2d 146; *Silsdorf v Levine,* 59 NY2d 8, *cert denied* 464 US 831).

The cases cited by defendants do not dictate a contrary result. The content of the statements in those cases is either dissimilar or not disclosed, and *Loudin v Mohawk Airlines* (27 AD2d 517) was decided on the basis that the action was not one of libel on its face and it was, therefore, necessary to plead special damages, which was not done.

The contention of defendants that the complaint is deficient for failure to allege falsity is without merit. The burden of proving the truth is imposed upon defendants in a case such as this one that involves private persons in a matter of purely private concern. In that limited circumstance, the common-law rules still survive and falsity is not a necessary allegation. It was necessary for plaintiff to plead only the three common-law elements to state a valid cause of action: (1) that the statement was defamatory; (2) that the statement referred to plaintiff; and (3) that defendants published the statement; the truth of the statement is an affirmative defense *(see, Bingham v Gaynor,* 203 NY 27; PJI 3:23, 3:23B, 3:33; Comment, 2 NY PJI 98, 101-102, 119, 186 [1995 Supp]). (Appeal from Order of Supreme Court, Erie County, Doyle, J.—Dismiss Complaint.) Present— Denman, P. J., Pine, Wesley, Balio and Boehm, JJ.