Matter of Kitto v City of Albany (2023 NY Slip Op 01033)

Matter of Kitto v City of Albany

2023 NY Slip Op 01033

Decided on February 23, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 23, 2023

534050
[*1]In the Matter of Christofer M. Kitto, Appellant,
v
City of Albany, New York Department of Police, et al., Respondents.

Calendar Date:January 13, 2023

Before:Egan Jr., J.P., Lynch, Clark, Ceresia and Fisher, JJ.

Abelove Law, PC, Albany (Joel E. Abelove of counsel), for appellant.
Marisa Franchini, Corporation Counsel, Albany (Matthew A. Toporowski of counsel), for respondents.

Lynch, J.
Appeal from a judgment of the Supreme Court (Christina L. Ryba, J.), entered June 30, 2021 in Albany County, which, in a proceeding pursuant to CPLR article 78, upon reargument, adhered to its prior decision granting respondents' motion for dismissal of the petition.
Petitioner was employed as a police officer with respondent City of Albany Police Department (hereinafter the police department) from July 2013 to May 2019. On January 7, 2019, petitioner was involved in an off-duty fatal shooting of an assailant armed with a knife, while allegedly going to meet a prostitute he had solicited online. Following an investigation, petitioner was cleared of wrongdoing related to the shooting, but was criminally charged with patronizing a person for prostitution in the third degree (see Penal Law § 230.04). In April 2019, respondents filed disciplinary charges against petitioner pertaining to the January 7, 2019 incident, which petitioner disputed and requested arbitration to resolve.
Meanwhile, the Oneida County District Attorney's Office (hereinafter the DA) offered petitioner a plea deal in the criminal proceeding pursuant to which he would plead guilty to the crime of driving while ability impaired and resign from his position as a police officer. Before accepting the proposal, the union attorney representing petitioner in the disciplinary proceeding — Christine Caputo Granich — proposed a settlement to respondents' attorney, Mary Roach, in which petitioner would accept the DA's plea deal provided the disciplinary charges were withdrawn before his resignation. This sequence would ostensibly allow plaintiff to maintain his New York State Police Officer Basic Training Certificate and seek employment as a police officer elsewhere. The police department would then report petitioner's resignation to the Division of Criminal Justice Services (hereinafter DCJS), the agency responsible for "maintaining a registry of all police officers in the state" (Matter of Aufiero v New York State Div. of Criminal Justice Servs., 173 AD3d 1320, 1320 [3d Dept 2019], lv denied 34 NY3d 912 [2020]; see Executive Law § 845 [1]). On the morning of May 13, 2019, Roach sent an email to Granich stating that "the notice of disciplinary charges . . . against [petitioner] ha[s] been withdrawn." Consequently, petitioner accepted the plea deal in the criminal matter and, later that day, sent a letter to Eric Hawkins, the Chief of Police, resigning his position.
Petitioner maintains that, following his resignation, he was offered a job requiring security clearance from the Department of State (hereinafter DOS). However, in June 2020, petitioner received a letter from DOS informing him that there were issues with his security clearance insofar as the police department had relayed that petitioner was removed from service "for cause" and had resigned while a disciplinary charge of misconduct was pending. Petitioner also received a letter from DCJS advising that, on June 19, 2020, the [*2]police department provided notice that plaintiff "ceased to serve their department due to incompetence or misconduct pursuant to [9 NYCRR 6056.2 (former [g] [2])]" and, as a consequence, that his basic training certificate had been invalidated (see 9 NYCRR 6056.4).
Thereafter, petitioner's new attorney wrote to Hawkins and demanded that the police department "immediately correct th[e] issue and notify DCJS that [petitioner's] basic training certification should not be revoked," emphasizing that the disciplinary charges had been withdrawn prior to petitioner's resignation pursuant to Roach's May 13, 2019 email. By letter response dated November 3, 2020, Hawkins took the position that the police department "was correct in notifying [DCJS] of the change in [petitioner's] employment status, as it related to his resignation while the disciplinary process had commenced."
Upon receipt of this letter, petitioner commenced the instant CPLR article 78 proceeding asserting that, insofar as the disciplinary charges against him had been withdrawn prior to his resignation, respondents' conduct of reporting to DCJS that his cessation from service was due to incompetence or misconduct was arbitrary and capricious, in contravention of the parties' agreement, and was made without regard to the facts. Petitioner sought, among other things, annulment of that determination and a judgment requiring respondents to report petitioner's resignation to DCJS in a manner consistent with which the parties agreed. Attached to the petition was an affidavit from Granich shedding light on the proposed agreement in the disciplinary matter. To that end, Granich confirmed that she had "several conversations" with members of the police department and Roach in relation thereto, at one point asking Roach to "ascertain whether . . . Hawkins . . . would agree to withdraw the notice of disciplinary charges if [p]etitioner resigned to permit [him] to seek employment elsewhere, without his employment status being encumbered." Granich averred that Roach reported to her that Hawkins "agreed to withdraw the charges" against petitioner in accordance with the proposal and subsequently sent her the May 13, 2019 email stating that the disciplinary charges had been withdrawn. Granich explained that, "[a] few days later," Hawkins provided petitioner with a letter that he could utilize in seeking employment that specified only his dates of employment and that he had resigned.
In lieu of answering, respondents moved to dismiss the petition, arguing that the disciplinary charges were never withdrawn by Hawkins prior to petitioner's resignation and, therefore, the manner in which the police department reported petitioner's status was correct. In support thereof, respondents submitted an affidavit from Hawkins explaining that he had the sole authority to withdraw the disciplinary charges against petitioner and had not done so. He denied having been informed by Roach of the proposed settlement, maintaining [*3]that the decision to withdraw the disciplinary charges was not discussed or approved by him, and that the May 13, 2019 email from Roach to Granich was "in contradiction of [his] authority and the requirement within the [police] department for such a decision to be passed through the chain of command."
Respondents also submitted an affidavit from Roach, who confirmed that she was advised by Granich that "a tentative plea deal had been reached which would involve [petitioner] resigning from his position." Granich asked Roach if "the City would be willing to withdraw the notice of discipline with [petitioner] immediately afterwards submitting his letter of resignation," and Roach confirmed that she "understood [that] the purpose of this proposed arrangement was to permit [petitioner] to maintain his status as a certified [p]olice [o]fficer." Roach informed Granich that the request would need to be considered by the police department command staff and she consulted Kathy Hendrick — an employee of the police department's Office of Professional Standards — about the proposal, asking Hendrick to "put the matter before the command staff and let [her] know the direction in which to proceed." Roach maintained that Hendrik was her "go to" person for such disciplinary matters and it "was the custom for more than [10] years" to contact Hendrick in this regard. Roach received a call from Hendrick on or about May 13, 2019 advising "that there was no [d]epartmental objection to proceeding as . . . Granich had requested." Roach then sent the email to Granich stating that the notice of discipline had been withdrawn. To the best of her recollection, Roach never spoke to Hawkins about the settlement and denied having informed Granich that it was approved by him.
In March 2021, over petitioner's objection, Supreme Court granted respondents' motion and dismissed the petition, finding that "respondents' determination to report that petitioner's separation from employment was due to 'incompetence or misconduct' as defined by 9 NYCRR . . . 6056.2 (former [g]) was supported by a rational basis and was not arbitrary and capricious." Relying on the affidavits submitted with respondents' motion, the court concluded that Hawkins possessed the sole authority to withdraw the disciplinary charges and certified that he never did so. In the absence of a written withdrawal by Hawkins, Supreme Court found that the disciplinary charges were still pending against petitioner at the time of his resignation and, therefore, respondents were required under the pertinent regulations to report his cessation from service as being for cause. Petitioner moved for reargument and/or renewal, arguing, among other things, that the court erred when it looked beyond the allegations in the petition to resolve the motion. By decision and order entered June 30, 2021, Supreme Court granted reargument and adhered to its prior determination. Petitioner appeals.[FN1]
Petitioner first argues that Supreme Court [*4]erred when it failed to utilize the liberal pleading standard that applies to pre-answer motions to dismiss and instead looked beyond the allegations in the petition to resolve respondents' motion.[FN2] As a general proposition, "[i]n determining [pre-answer] motions to dismiss [for failure to state a cause of action] in the context of [a CPLR] article 78 proceeding, a court may not look beyond the petition and must accept all allegations in the petition as true" (Matter of Scott v Commissioner of Correctional Servs., 194 AD2d 1042, 1043 [3d Dept 1993]; see Matter of Ball v City of Syracuse, 60 AD3d 1312, 1313 [4th Dept 2009], lv dismissed 13 NY3d 823 [2009]; Matter of Green Harbour Homeowners' Assn. v Town of Lake George Planning Bd., 1 AD3d 744, 745 [3d Dept 2003]). However, when the parties have "deliberately chart[ed] a summary judgment course," the trial court may sua sponte treat a pre-answer motion to dismiss as one for summary judgment and consider evidence submitted with the motion (Matter of Town of Geneva v City of Geneva, 63 AD3d 1544, 1544 [4th Dept 2009] [internal quotation marks and citations omitted]; see Matter of Phillips v Town of Clifton Park Water Auth., 215 AD2d 924, 926 [3d Dept 1995]).
In support of his claim that the police department acted arbitrarily and capriciously by reporting to DCJS that he ceased to serve due to incompetence or misconduct, petitioner annexed to his petition documentary evidence purporting to establish that the disciplinary charges were no longer pending against him at the time that he tendered his resignation, including Roach's May 13, 2019 email and Granich's affidavit. In response, respondents submitted affidavits from Hawkins and Roach to support their contention that the disciplinary charges had not been validly withdrawn prior to petitioner's resignation. Accordingly, the parties were arguably seeking a merits determination based upon the evidence in their possession.[FN3] Notably, in petitioner's answering affidavit submitted in opposition to the motion, he invoked the summary judgment standard of review, emphasizing that "issues of fact remain to be tried by the [c]ourt which preclude granting [r]espondents' motion." On this record, it is clear that the parties were "laying bare their proof" and "deliberately charting a summary judgment course" (Matter of Phillips v Town of Clifton Park Water Auth., 215 AD2d at 926 [internal quotation marks and citation omitted]). Accordingly, Supreme Court did not err in "look[ing] beyond the petition itself" in resolving respondents' motion (Matter of Bronx-Lebanon Hosp. Ctr. v Daines, 101 AD3d 1431, 1432 [3d Dept 2012]). We further reject petitioner's argument that Supreme Court overlooked the fact that the petition "adequately pl[eaded] fraud or fraudulent misrepresentations by [the police department] during the disciplinary settlement agreement," as such causes of action were neither pled, nor cognizable by way of a CPLR article 78 proceeding (see CPLR 7803).
That said, we agree with petitioner's argument that Supreme Court erred in dismissing the petition at the pre-answer stage, as there are outstanding factual questions that must be answered to determine whether respondents acted arbitrarily and capriciously in reporting to DCJS that petitioner had ceased employment due to incompetence or misconduct (see CPLR 409 [b]; CPLR 7804 [h]; Matter of Barreca v DeSantis, 226 AD2d 1085, 1086 [4th Dept 1996]). Pursuant to Executive Law § 845 (2) (a), police departments must notify DCJS when officers in their employ cease to serve, including whether the cessation was "due to a leave of absence, resignation, removal, removal for cause, or removal during a probationary period" (Executive Law § 845 [2] [b]; see 9 NYCRR 6056.4 [d], formerly [c]). Upon receipt of such notice, DCJS makes a determination about whether the officer's basic training certification should be invalidated. DCJS may permanently invalidate a basic training certificate "upon an officer's removal for cause in accordance with [Executive Law § 845 (2) and (3)]" (General Municipal Law § 209-q [1] [b-1]). At the time that DCJS was notified by the police department that petitioner had ceased employment, a "[r]emoval for cause" meant, in relevant part, a "removal for incompetence or misconduct" occurring "by an employee's resignation or retirement while a disciplinary process has commenced . . . which may result in removal" (9 NYCRR 6056.2 [former (g) (2)]). Thus, a determination of whether respondents' report to DCJS was arbitrary and capricious hinges on whether the disciplinary charges against petitioner remained pending at the time of his resignation (see Matter of Aufiero v New York State Div. of Criminal Justice Servs., 173 AD3d at 1320).
Although Hawkins averred that he had the sole authority to withdraw the disciplinary charges against petitioner and never did so, Granich's affidavit stated that Roach informed her that Hawkins had approved the proposal. Moreover, Roach's affidavit calls into question Hawkin's statement that he had the sole authority to approve the request, explaining that it was her custom, for over 10 years, to contact Hendrick about such disciplinary matters and that Hendrik ultimately advised, after speaking with the command staff, that there was "no [d]epartmental objection to proceed as . . . Granich had requested." Roach clearly viewed such statement as authorizing her to proceed with the settlement. Noticeably absent is an affidavit from Hendrick herself and there is no information about how she obtained the approval from command staff or with whom she spoke in this regard. Granich's affidavit reveals that Hawkins provided a letter to petitioner that he could utilize in seeking employment elsewhere, stating only that he had resigned without any indication that such resignation was for cause.
Given the foregoing, a question of fact remains as to whether the disciplinary charges against petitioner were withdrawn prior [*5]to his resignation. This record sheds little light on the procedure that the police department used to address Granich's settlement proposal, rendering it unclear whether Roach's email constituted a valid confirmation that the disciplinary charges had in fact been withdrawn. We take further note that the identity of the individual who notified DCJS that petitioner resigned in connection with pending disciplinary charges is unknown and, thus, it cannot be determined whether this individual was aware of the purported withdrawal of the disciplinary charges upon making the report to DCJS. These questions must be answered to determine whether it was arbitrary and capricious for respondents to report to DCJS that petitioner resigned for cause as defined in the pertinent regulations. As such, Supreme Court erred in granting respondents' motion at the pre-answer stage and a hearing on these issues should be held accordingly (see Matter of County of Suffolk v Long Is. Power Auth., 119 AD3d 940, 942-943 [2d Dept 2014]; Matter of Ostrowski v County of Erie, 245 AD2d 1091, 1092-1093 [4th Dept 1997]; Matter of Lanthier v Department of Transp. of State of N.Y., 183 AD2d 1083, 1085 [3d Dept 1992]).
Clark, Ceresia and Fisher, JJ., concur; Egan Jr., J.P., not taking part.
ORDERED that the judgment is reversed, on the law, without costs, respondents' motion denied, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: Petitioner also appealed the March 2021 order, but such appeal was dismissed for failure to perfect.

Footnote 2: We reject respondents' contention that this is the only argument that is properly before this Court insofar as Supreme Court granted reargument only as to this issue (see Matter of Barnes v Rodriguez, 208 AD3d 1525, 1525 [3d Dept 2022]). Although the court stated in its June 2021 order that it was granting reargument as to whether it had improperly looked beyond the petition in deciding respondents' pre-answer motion, and did not make that statement with respect to any other arguments advanced by petitioner, the court nevertheless considered the merits of those other arguments, ultimately rejecting them. As such, "we deem the court to have granted reargument [on all aspects of the March 2021 order], and then adhered to its prior decision, rendering the [June 2021] order appealable" in its entirety (Matter of Manufacturers & Traders Trust Co. v J.D. Mar. Serv., 187 AD3d 1249, 1251 [3d Dept 2020]).

Footnote 3: Although the motion papers cited CPLR 3211 (a) (4) as the statutory predicate upon which dismissal was sought, respondents subsequently indicated that reference to that provision was a typographical error.