Carpenter v City of Norwich
2026 NY Slip Op 03855
June 18, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Justin Carpenter, Respondent,
v
City of Norwich et al., Appellants.

Decided and Entered:June 18, 2026
CV-25-0097
Calendar Date: April 23, 2026
Before: Clark, J.P., Aarons, Pritzker, Mcshan And Ryba, JJ.

Johnson & Laws, LLC, Clifton Park (April J. Laws of counsel), for appellants.
Spicer Law Office, Syracuse (Lewis G. Spicer of counsel), for respondent.

[*1]
Pritzker, J.
Appeal from an order of the Supreme Court (Patrick O'Sullivan, J.), entered January 15, 2025 in Chenango County, which partially denied a motion by defendants for summary judgment dismissing the complaint.
Plaintiff, a former police officer with defendant City of Norwich Police Department (hereinafter the Norwich PD), resigned in 2018 in settlement of several charges of misconduct brought against him. Plaintiff thereafter sought law enforcement employment with defendant City of Norwich and with Chenango County, but he was disqualified from eligibility based on his failure to disclose details of his settlement. Although he commenced a subsequent CPLR article 78 proceeding challenging those disqualifications, it was dismissed pursuant to CPLR 3211 (a) (7). In the interim, plaintiff commenced this action asserting causes of action for breach of contract, defamation and intentional infliction of emotional distress. Following joinder of issue, defendants moved for summary judgment dismissing the complaint. Supreme Court granted the motion to the extent of dismissing the complaint against the Norwich PD as well as a claim for punitive damages against the City, and otherwise denied the motion. As relevant here, the court concluded that there were triable issues of fact as to all three causes of action. Defendants appeal from so much of the order as denied their motion for summary judgment.FN1
Defendants contend that they satisfied their prima facie burden of establishing their entitlement to judgment as a matter of law dismissing each of plaintiff's claims and that plaintiff, in response, failed to raise a triable issue of fact. In that regard, we turn our attention first to the defamation cause of action. As relevant here, a claim for defamation requires proof of "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (Rosen v Price Chopper, 239 AD3d 1132, 1133 [3d Dept 2025] [internal quotation marks and citations omitted]; see Carr v Wegmans Food Mkts., Inc., 182 AD3d 667, 669 [3d Dept 2020]). Courts have recognized that certain statements furthering public interests are afforded a qualified privilege from defamation liability that may be overcome only by a showing that "the defendant acted out of personal spite or ill will, with reckless disregard for the statements' truth or falsity, or with a high degree of belief that their statements were probably false" (Radiation Oncology Servs. of Cent. N.Y., P.C. v Our Lady of Lourdes Mem. Hosp., Inc., 221 AD3d 1324, 1333 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Partridge v State of New York, 173 AD3d 86, 96-97 [3d Dept 2019]). These include "good faith communication[s] upon a subject in which [the speaker] has an interest, or a legal, moral or societal interest to speak, and made to a person with a corresponding [*2]interest" (Macumber v South New Berlin Lib., 186 AD3d 1864, 1864 [3d Dept 2020] [internal quotation marks, ellipsis and citations omitted]; see Front, Inc. v Khalil, 24 NY3d 713, 719 [2015]). Accordingly, "[o]n a motion for summary judgment dismissing a defamation [claim], such [claim] is properly dismissed where a qualified privilege obtains and the plaintiff offers an insufficient showing of malice" (Virk v Kaleida Health, 227 AD3d 1422, 1424 [4th Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 42 NY3d 909 [2024]).
As further relevant here, 9 NYCRR part 6056 establishes a Central State Registry of Police Officers and Peace Officers administered by the Department of Criminal Justice Services (hereinafter DCJS) (see 9 NYCRR 6056.1). At the time of the events giving rise to this suit, employers were required to "immediately notify [DCJS] when an . . . officer ceases to serve," using a designated " 'Registry Update Form' " (9 NYCRR 6056.5 [former (c)]). The regulations additionally provided that such notice must contain "the reason for such" cessation of service, including, as relevant here, "[r]esignation" and "[r]emoval for [c]ause as defined in" 9 NYCRR 6056.2 (former [g]) (9 NYCRR 6056.4 [former (c) (2), (4)]; see also Executive Law § 845 [2] [b]). Removal for cause was defined in relevant part as removal pursuant to a disciplinary hearing under Civil Service Law § 75, a collective bargaining agreement, or other applicable law, or "by an employee's resignation or retirement while a disciplinary process has commenced . . . which may result in removal" (9 NYCRR 6056.2 [former (g) (1)-(2)] [emphasis added]). As this Court explained, whether an officer would be deemed to have resigned "while a disciplinary process has commenced" would "hinge[ ] on whether the disciplinary charges . . . remained pending at the time of [the officer's] resignation" (Matter of Kitto v City of Albany, N.Y. Dept. of Police, 213 AD3d 1165, 1170 [3d Dept 2023] [internal quotation marks and citation omitted]; see generally Matter of Aufiero v New York State Div. of Criminal Justice Servs., 173 AD3d 1320, 1320 [3d Dept 2019], lv denied 34 NY3d 912 [2020]).
In support of defendants' motion for summary judgment, they proffered, among other things, plaintiff's notice of termination, the stipulation of settlement, a police officer registry update form signed by defendant Rodney Marsh — who is chief of police of the Norwich PD — and Marsh's affidavit. The notice of termination indicates that plaintiff was terminated by the Norwich PD in June 2016 on several charges of misconduct stemming from alleged harassment and sexual harassment of subordinate officers. Plaintiff commenced a grievance against the notice of termination and demanded arbitration pursuant to his collective bargaining agreement, but, in August 2017, plaintiff and the City agreed to the stipulation of settlement to avoid the "time, expense, delay and uncertainty" presented by arbitration[*3]. Under the stipulation, the notice of termination against plaintiff would be withdrawn, he would be reinstated to the payroll retroactive to June 2017, and he would "irrevocably resign[ ]" from City employment effective January 31, 2018. Though he would be reinstated to the payroll, he agreed to remain off duty until his resignation date. The police officer registry update form submitted by Marsh in March 2018 noted that plaintiff left City service on February 1, 2018 and did so by reason of "incompetence or misconduct pursuant to . . . resignation or retirement while a disciplinary process has commenced." In his affidavit, Marsh stated that he understood the confidentiality requirements of the stipulation of settlement but believed, based on DCJS guidance concerning 9 NYCRR part 6056, that he was "mandated . . . as a matter of law," to report to DCJS that plaintiff had "resigned while a disciplinary process has commenced for misconduct" (internal quotation marks and citation omitted).
Given the foregoing, defendants satisfied their prima facie burden with respect to plaintiff's claim for defamation. The statement conveyed by the March 2018 DCJS filing — that plaintiff had been removed for cause "for incompetence or misconduct pursuant to
. . . resignation or retirement while a disciplinary process has commenced" — would be false inasmuch as the disciplinary process against plaintiff had terminated with the withdrawal of his notice of termination under the stipulation prior to his resignation (see Matter of Kitto v City of Albany, N.Y. Dept. of Police, 213 AD3d at 1170). Additionally, although generally, "[t]he mere fact of one's removal from office carries no imputation of dishonesty or lack of professional capacity," here the statement was reasonably susceptible to a defamatory construction given that it "insinuat[ed] that the dismissal was for some misconduct" (Greenberg v Spitzer, 155 AD3d 27, 48 [2d Dept 2017] [internal quotation marks and citations omitted]; see Chang v Fa-Yun, 265 AD2d 265, 265 [1st Dept 1999]). More specifically, although the DCJS notice is clear that plaintiff resigned and that he did so while a disciplinary process had merely "commenced," it also refers to plaintiff's departure as a "[r]emoval for [c]ause" linked to "incompetence or misconduct," thereby permitting a reasonable inference that plaintiff's departure from service was tied to misconduct (see Carney v Memorial Hosp. & Nursing Home of Greene County, 64 NY2d 770, 772 [1985]; compare Streips v LTV Corp., 216 AD2d 923, 924 [4th Dept 1995]). However, as defendants contend, the statement was made in furtherance of the legal duty to report plaintiff's cessation of service with the Norwich PD and "the reason for such" (9 NYCRR 6056.4 [former (c)]), thereby triggering qualified privilege and shifting the burden to "raise a triable issue of fact whether the statement[ ] [was] motivated solely by malice" (Fiore v Town of Whitestown, 125 AD3d 1527, 1529 [4th Dept 2015][*4][internal quotation marks and citation omitted], lv denied 25 NY3d 910 [2015]; see Stega v New York Downtown Hosp., 31 NY3d 661, 670 [2018]).
To that end, we disagree with plaintiff's assertion that he has raised a triable issue of fact as to malice. While plaintiff contends that defendants were either aware of the falsity of the statements set forth in the DCJS form or acted with reckless disregard for their truth or falsity, in his affidavit Marsh averred that he believed he was following contemporaneous DCJS guidance. The record demonstrates that guidance emphasized that "all departments reporting the removal of an officer who ceases to serve" had to "provide the regulatory reason for such removal." Although this guidance also suggested that a removal for cause was meant to encompass a resignation "while disciplinary proceedings were pending," it should be noted that plaintiff had irrevocably committed to resign in the same document that withdrew his notice of termination, and this Court had not yet indicated, as it did in Matter of Kitto, that that language required proof that the charges were still pending on the actual date of the employee's resignation (213 AD3d at 1170). Thus, even if aware that the stipulation withdrew the notice of termination against plaintiff — a fact which Marsh denied — plaintiff's proof does not raise a material issue of fact as to whether the statements in the DCJS notice were made with "a high degree of awareness of their probable falsity" or with "serious doubts as to their truth" (Verdi v Dinowitz, 232 AD3d 31, 46 [1st Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 43 NY3d 907 [2025]; see Liberman v Gelstein, 80 NY2d 429, 438 [1992]). Thus, having failed to raise a material issue of fact as to whether the statement to DCJS was made by defendants "with actual malice sufficient to defeat the application of [qualified privilege]," defendants' motion for summary judgment as to the defamation claim should be granted (Virk v Kaleida Health, 227 AD3d at 1426-1427; see Radiation Oncology Servs. of Cent. N.Y., P.C. v Our Lady of Lourdes Mem. Hosp., Inc., 221 AD3d at 1333). As to the intentional infliction of emotional distress claim, we similarly find that defendants "demonstrated, prima facie, that the alleged conduct was not sufficiently extreme and outrageous so as to form the basis for intentional infliction of emotional distress, and, in opposition, . . . plaintiff did not raise a triable issue of fact" (Li v Navaretta, 220 AD3d 758, 760-761 [2d Dept 2023]; see Cusimano v United Health Servs. Hosps., Inc., 91 AD3d 1149, 1152 [3d Dept 2012], lv denied 19 NY3d 801 [2012]).
Turning our attention to the breach of contract claim, "a cause of action for breach of contract requires that plaintiff show the existence of a contract, the performance of its obligations under the contract, the failure of defendant[s] to perform [their] obligations and damages resulting from defendant[s'] breach[*5]" (Ithaca Montessori Sch. v Pfeffer, 239 AD3d 1128, 1130 [3d Dept 2025] [internal quotation marks and citations omitted]; see Turner v Quinones, 244 AD3d 1331, 1333 [3d Dept 2025]). In support of their motion for summary judgment, defendants proffered, in addition to those specifically mentioned above, three pink sheets of paper from plaintiff's personnel file, titled "Supplementary Payroll Certification and Report of Personnel Change" and signed by both Marsh and defendant Deborah DeForest, indicating that plaintiff had been removed, reinstated, and resigned "per stipulation [of] settlement . . . 8/17/17." Pursuant to the stipulation, the parties agreed that the stipulation itself and notice of termination would not be placed in plaintiff's personnel file and that, if contacted by a prospective employer, the City would provide only a limited subset of information in response. The stipulation also provided that the City would allow prospective employers to review plaintiff's personnel file "only upon the written consent of [plaintiff] or [court order]." The parties also agreed that they would "refrain from discussing the [n]otice of [t]ermination, the underlying allegations, and the terms of [the] settlement, except as required by law."
Defendants also proffered an affidavit of DeForest who averred that, until her retirement as City Human Resources Director in April 2018, she kept the stipulation and notice of termination in a locked desk drawer and understood that it was not to be placed in plaintiff's personnel file. She acknowledged placing the pink sheets in plaintiff's personnel file, believing she was "mandated" to do so as part of her duty to "keep a record of each civil service transaction," but denied having discussed the terms of the stipulation or notice of termination with any of plaintiff's prospective employers. Deana DuFour, temporary custodian of plaintiff's personnel file from April 2018 to May 2019, stated that she never saw the stipulation or notice of termination in plaintiff's personnel file and never discussed same with prospective employers, testimony echoed by Lynn Murray, the City's Human Resources Director as of May 2019. Murray and Agnes Eaton, the City's Deputy Clerk and FOIL Officer, attested that Murray provided a copy of the stipulation and notice of termination in response to plaintiff's FOIL request in early 2020, with Murray explaining that it was because plaintiff himself had made the request. Also, in Marsh's affidavit, he denied having communicated with any other law enforcement agency about the stipulation or notice of termination.
Based upon the foregoing, defendants met their prima facie burden with respect to the breach of contract claim. Initially, the stipulation of settlement is a type of contract (see Matter of Telian, 239 AD3d 1107, 1109 n [3d Dept 2025]) and the parties do not suggest that plaintiff himself breached it. However, the issue of whether defendants breached the stipulation requires resort [*6]to its plain text as the "best evidence of the parties' intent" (O'Brien v Sagbolt LLC, 246 AD3d 111, 114 [3d Dept 2025] [internal quotation marks and citations omitted]; see Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). To that end, the stipulation provides that defendants were solely obligated to disclose only a limited body of information in response to inquiries by plaintiff's prospective employers and "no further information," ensure that plaintiff's personnel file did "not include [the stipulation] or the [n]otice of [t]ermination," and "refrain from discussing the [n]otice of [t]ermination, the underlying allegations, and the terms of [the] settlement," except as required by law. Significantly, nothing in this language precludes the broad references to the stipulation's existence and the employment impact therefrom contained in the pink sheets, which do not otherwise indicate the terms of the stipulation or the charges set forth in the notice of termination. Although the pink sheets apparently caused one prospective employer to inquire further into the stipulation and notice of termination, there is no indication that any other prospective employers beyond the City itself were told by defendants about the stipulation, notice of termination, or their terms, and both Marsh and DeForest denied having done so.FN2 Consequently, defendants have established as a matter of law that they did not breach the stipulation, shifting the burden to plaintiff to raise a material issue of fact (see Darwish Auto Group, LLC v TD Bank, N.A., 246 AD3d 1332, 1342 [3d Dept 2026]; Chase v Leidner, 243 AD3d 976, 978 [3d Dept 2025]).
As relevant here, plaintiff presented an additional excerpt of his General Municipal Law § 50-h hearing testimony indicating that a prospective employer had "brought up the stipulation," as well as excerpts from Marsh's deposition indicating that he would customarily expect to "hear from" any police department looking to hire a former Norwich PD officer and that he knew he was bound by the stipulation of settlement. Plaintiff himself affirmed that, although the confidentiality provisions of the stipulation were "extremely important" to his decision to enter into the stipulation of settlement, he had since been asked for a copy of the stipulation by the Binghamton Civil Service Commission and disqualified from eligibility by the Chenango County Civil Service Commission based on the stipulation, and "[m]ost" of his prospective employers had since denied him employment based on their background checks, which included his personnel file. He also affirmed that he had received the pink sheets, stipulation and notice of termination pursuant to his FOIL request for his personnel file in 2020. This proof, however, does not change the fact that the plain and unambiguous language of the stipulation of settlement does not preclude the inclusion of brief, nonspecific references to the stipulation of settlement in plaintiff's personnel file. [*7]Moreover, although plaintiff affirmed that his applications for employment were typically denied because of his background check and that some employers mentioned the stipulation to him, he offers nothing beyond speculation to indicate that defendants were responsible. Nor does he establish that, beyond the City's response to his own FOIL request, the City has ever provided copies of the stipulation and notice of termination to anyone else. Thus, having offered only "conclusory and speculative allegations," plaintiff has not satisfied his burden of establishing triable issues of fact on this claim (Matter of Hattala, 244 AD3d 1685, 1688 [3d Dept 2025]; see Peterson v Garnsey, 227 AD3d 1249, 1251 [3d Dept 2024]). As such, defendants' motion for summary judgment as to the breach of contract claim should be granted. In light of these determinations, we need not reach defendants' remaining contentions.
Clark, J.P., Aarons, McShan and Ryba, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' motion seeking summary judgment on the first, second and third causes of action; motion granted to said extent; and, as so modified, affirmed.

Footnotes

Footnote 1
It should be noted that, insofar as the appeal purports to be taken by the Norwich PD, the complaint was dismissed in its entirety against it and thus it is not a party aggrieved (see CPLR 5511; Matter of Roach v Cornell Univ., 207 AD3d 931, 931-932 [3d Dept 2022]).

Footnote 2
We note that Marsh's aforementioned communications to DCJS about plaintiff's separation from employment did not convey any details of the stipulation or of the notice of termination beyond noting that plaintiff had resigned and that an unspecified disciplinary process had commenced.