Matter of Tatko v Village of Granville (2022 NY Slip Op 04685)

Matter of Tatko v Village of Granville

2022 NY Slip Op 04685

Decided on July 21, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 21, 2022

534457
[*1]In the Matter of Robert L. Tatko, Appellant,
v
Village of Granville et al., Respondents.

Calendar Date:June 2, 2022

Before:Garry, P.J., Egan Jr., Lynch, Reynolds Fitzgerald and McShan, JJ.

Fusco Law Office, Albany (Adam Fusco of counsel), for appellant.
The Law Office of Martin & Martin, Glens Falls (Michael S. Martin of counsel), for respondents.

Egan Jr., J.
Appeal from a judgment of the Supreme Court (Auffredou, J.), entered May 25, 2021 in Washington County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondents denying petitioner's Freedom of Information Law request.
On September 15, 2020, petitioner was defeated in a special election, administered by respondent Village of Granville (hereinafter the Village), for the office of Village trustee (see Election Law § 15-106). The certified vote reflected that petitioner lost by a vote of 180-164, with absentee ballots accounting for 91 of his opponent's votes, but only 14 of his own. Petitioner suspected that the high number of absentee ballots cast for his opponent reflected some sort of irregularity in the voting process, and his counsel submitted a Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) request for various election-related items to respondent Richard Roberts, who was the Village Clerk and Treasurer as well as the Village's records access officer. The request sought items under five categories, namely: (1) a list of all individuals who had received and/or requested an absentee ballot; (2) a list of all individuals who had returned an absentee ballot; (3) all applications for an absentee ballot; (4) all voter files for anyone who returned, received and/or requested an absentee ballot, including the signature on file for those voters; and (5) a copy of all absentee ballot envelopes showing the date of receipt as well as any outer envelopes showing the postmarked date.
In response, Roberts reminded petitioner that he had already reviewed the items responsive to the first request and invited petitioner's counsel to make an appointment to inspect documents responsive to the first and second requests. Roberts indicated that items responsive to the third request, redacted to prevent disclosure of information that constituted an unwarranted invasion of voters' privacy, would be made available for inspection in the same manner. Roberts denied the fourth request as both vague and as appearing to seek poll books and voter signature files that were in the exclusive possession of the Washington County Board of Elections, although Roberts invited petitioner to clarify that request if it had been misunderstood. Roberts also denied the fifth request, advising petitioner that those records were not subject to FOIL and could only be accessed with an appropriate court order.
Petitioner submitted an administrative appeal in which he rehashed his initial requests, sought copies of the responsive documents and added, with regard to the fourth request that Roberts had found to be unclear, that he was seeking a "voter dump." Respondent Mayor of the Village of Granville satisfied the second request by turning over a list of individuals who returned an absentee ballot, but otherwise upheld Roberts' determination in all respects. The Mayor, in so doing, [*2]provided a legal memorandum detailing the basis for his beliefs that the Election Law only permitted inspection of the documents sought under petitioner's first and third requests and that petitioner was barred from reviewing the absentee ballot envelopes sought under the fifth request absent a court order. Petitioner then commenced this CPLR article 78 proceeding, complaining about both the scope and the method of access. Supreme Court dismissed the petition, and petitioner appeals.
We affirm. At the outset, although FOIL generally directs that governmental entities make public records "available for public inspection and copying," respondents properly determined that the more specific provisions of the Election Law were controlling and only allowed inspection of documents responsive to petitioner's first and third requests (Public Officers Law § 87 [2] [emphasis added]; see People v Mobil Oil Corp., 48 NY2d 192, 200 [1979] [noting that a specific statutory provision controls over a general one]). Those requests sought a list of individuals who had received and/or requested absentee ballots as well as the applications for those ballots. Election Law § 3-220 (1) only permits "public inspection" of the "registration records, certificates, lists, and inventories referred to in, or required by" the Election Law; however, it then confirms that the omission of a provision for copying was deliberate by providing that "[n]o such records shall be handled at any time by any person other than a member of a registration board or board of inspectors of elections or board of elections except as provided by rules imposed by the board of elections" (see also Election Law § 8-402 [7] [authorizing inspection alone of "a complete list of all applicants to whom absentee voters' ballots have been delivered or mailed"]). The documents sought in the first and third requests fall within the scope of that statute, and it follows that petitioner is not entitled to "copies of the documents, . . . since copies of such records may not be publicly disseminated, but are subject only to public inspection" (Matter of Waldman v Village of Kiryas Joel, 31 AD3d 569, 569 [2006]; Comm on Open Govt FOIL-AO-11456 [1999]; see also Matter of John v New York State Ethics Commn., 178 AD2d 51, 54 [1992], lv denied 80 NY2d 753 [1992]).
Turning to the items that respondents asserted were partially or entirely exempt from disclosure, government records are presumptively available for public disclosure pursuant to FOIL unless they fall within one of the enumerated exemptions set forth in Public Officers Law § 87 (2) (see Matter of Kosmider v Whitney, 34 NY3d 48, 54 [2019]; Matter of Madeiros v New York State Educ. Dept., 30 NY3d 67, 73 [2017]; Matter of Cohen v Alois, 201 AD3d 1104, 1105 [2022]). As such, "the burden rests on the agency seeking to prevent disclosure to demonstrate that the requested materials fall squarely within a FOIL exemption by articulating a particularized justification [*3]for denying access" (Matter of Applegate v Fischer, 89 AD3d 1303, 1304 [2011]; accord Matter of Cohen v Alois, 201 AD3d at 1105; see Matter of Kosmider v Whitney, 34 NY3d at 54). Respondents asserted that records responsive to the third request required redactions to prevent "an unwarranted invasion of personal privacy under the provisions of [Public Officers Law § 89 (2)]" (Public Officers Law § 87 [2] [b]) and that the records responsive to his fifth request were "specifically exempted from disclosure by state or federal statute" (Public Officers Law § 87 [2] [a]).
With respect to petitioner's third request for absentee ballot applications, those applications include intimate information about the applicant — most notably the reason for seeking an absentee ballot, which could involve the applicant's medical conditions and disabilities — and respondents therefore demonstrated that the disclosure of the applications without redactions would lead to an unwarranted invasion of personal privacy (see Election Law § 8-400 [3]; Public Officers Law §§ 87 [2] [b]; 89 [2] [b] [i]; Matter of Hanig v State of N.Y. Dept. of Motor Vehs., 79 NY2d 106, 110 [1992]; Matter of Hepps v New York State Dept. of Health, 183 AD3d 283, 290-291 [2020], lv dismissed and denied 37 NY3d 1001 [2021]; Comm on Open Govt FOIL-AO-13995 [2003]; Comm on Open Govt FOIL-AO-13443 [2002]). As for petitioner's fifth request seeking copies of absentee ballot envelopes and mailing envelopes, it is settled that Election Law § 3-222 (2) and (3) "establish[es] a general default rule that ballots," including absentee ballots and their envelopes, "are not freely accessible by the public during the first two years after an election and that, to examine them, a party must go through the prescribed channels supervised by the court or legislative committee, which were not followed here" (Matter of Kosmider v Whitney, 34 NY3d at 56).[FN1] In other words, the statute "takes requests for access to ballots [and envelopes] out of the hands of FOIL officers during the restricted examination period, instead authorizing courts and legislative committees to supervise limited examination of the materials," and respondents were therefore correct in determining that the envelopes sought by petitioner were specifically exempted from disclosure under FOIL by Election Law § 3-222 (id. at 62; see Public Officers Law § 87 [2] [a]).
Petitioner's remaining contentions do not demand extended discussion. Respondents complied with petitioner's second request by providing him with the demanded "list of all individuals who returned an absentee ballot," and his present argument that other, unrequested information should have also been disclosed is not properly before us (see Matter of Fappiano v New York City Police Dept., 95 NY2d 738, 749 [2001]). As to petitioner's fourth request, respondents properly certified that the poll books and voter signature files he appeared to be seeking were not in their possession and, [*4]moreover, demonstrated that his minimal efforts to clarify the request did not "reasonably describe[]" any other items that might have been (Public Officers Law § 89 [3] [a]; see Matter of Rattley v New York City Police Dept., 96 NY2d 873, 875 [2001]; Mitchell v Slade, 173 AD2d 226, 227 [1991], lv denied 78 NY2d 863 [1991]).[FN2] Petitioner's other arguments have been examined and lack merit.
Garry, P.J., Lynch, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Petitioner sought the outer mailing envelope as well as the envelope containing the absentee ballot itself, which are two of the "three envelopes for each absentee ballot issued by mail: the inner affirmation envelope into which a voter places his or her voted ballot, the outer envelope which shall be addressed to the absentee voter, and the mailing envelope" (Election Law § 7-122 (3); see also Election Law § 7-122 [8]). Election Law § 3-222 (3) draws no distinction between the three types of envelopes when it specifies that "absentee . . . ballots and ballot envelopes may [only] be examined" with court or legislative authorization during the restricted examination period.

Footnote 2: Contrary to petitioner's suggestion, the fact that his FOIL request to the Washington County Board of Elections disclosed no records pertaining to absentee ballots cast in the special election does not lead to the conclusion that the Board did not have exclusive possession of the poll books used to conduct that election or that the Board could not have produced responsive documents for absentee voters had he identified those voters.