Matter of New York Civ. Liberties Union v New York State Police (2024 NY Slip Op 03369)

Matter of New York Civ. Liberties Union v New York State Police

2024 NY Slip Op 03369

Decided on June 20, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 20, 2024

CV-23-0999 , CV-23-1689
[*1]In the Matter of New York Civil Liberties Union, Respondent,
v
New York State Police, Appellant.

Calendar Date:April 23, 2024

Before:Pritzker, J.P., Reynolds Fitzgerald, Ceresia, McShan and Mackey, JJ.

Letitia James, Attorney General, Albany (Laura Etlinger of counsel), for appellant.
Latham & Watkins LLP, New York City (Peter Trombly of counsel) and New York Civil Liberties Union Foundation, New York City (Robert Hodgson of counsel), for respondent.

McShan, J.
Appeals (1) from a judgment of the Supreme Court (Keri E. Savona, J.), entered April 14, 2023 in Albany County, which partially granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent partially granting petitioner's Freedom of Information Law request, and (2) from an order of said court, entered July 31, 2023 in Albany County, which, among other things, upon reargument, adhered to its prior decision.
These appeals concern a request to produce law enforcement personnel records that were previously shielded by Civil Rights Law § 50-a until its repeal in 2020 (L 2020, ch 96, § 1). Shortly after the Legislature removed the impediment to disclosure of said records, petitioner filed a Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) request with respondent seeking, as relevant here, "copies of all law enforcement disciplinary records" (category A [1]), and "[d]ocuments sufficient to show the total number of complaints per calendar year . . . broken down by the subject of the complaint" (category D [5]), for a period of more than 20 years, spanning from January 1, 2000 to September 15, 2020. Thereafter, respondent's record access officer (hereinafter RAO) advised by January 2022 correspondence that, in satisfaction of petitioner's request under category D (5), it had compiled a spreadsheet which included certain responsive information including, among other things, the individual's name unless redacted for privacy, the case number of each complaint, the allegations of misconduct, the investigatory finding and the disciplinary disposition. However, the RAO indicated that the remaining requests, including those under category A (1), were being denied based upon petitioner's purported failure to reasonably describe the records sought and the "herculean" efforts necessary to produce such records. The RAO further indicated that it had otherwise deemed its response to petitioner's request complete. Petitioner appealed that determination and respondent denied the appeal, adhering to the RAO's prior determination that those parts of petitioner's request that were denied failed to reasonably describe the records sought and that producing the remaining records would be overly burdensome.
Petitioner then filed this CPLR article 78 petition seeking to compel respondent to produce the outstanding documents. Respondent moved to dismiss the petition in November 2022 for failure to state a cause of action. Petitioner opposed and Supreme Court, among other things, denied the motion, directed respondent to answer and further provided the parties with various points to address in their respective responsive papers.[FN1] Respondent answered, providing a supporting affirmation from Shannon Brundige, respondent's assistant counsel, which asserted, among other things, that respondent had produced all reasonably identifiable records and that the remaining records were voluminous, contained [*2]confidential information and, hence, could not be outsourced to a third party. Consequently, respondent argued that producing the documents would be overly burdensome. In its April 2023 order, Supreme Court determined that respondent was estopped from contending that the request was overly broad considering its specific identification of the efforts necessary to locate the requested documents. However, the court agreed with respondent's undue burden contention to an extent, finding that the production of category A (1) in its entirety would be inappropriate. Nevertheless, Supreme Court found it appropriate to narrow respondent's obligation to produce documents requested by petitioner under category A (1) to a subset of that category limited to the individuals identified by respondent in its answer to petitioner's category D (5) request.[FN2] Respondent filed a notice of appeal and simultaneously moved for leave to renew/reargue, supporting the latter with a second affidavit from Brundige that assessed the revised burden of production based upon the relief granted by the court. Supreme Court purportedly denied respondent's motion and adhered to its prior determination, prompting respondent's appeals from the court's original determination as well as the subsequent order addressing respondent's motion to renew/reargue.
We first address respondent's assertion that Supreme Court lacked the authority to modify petitioner's request for documents in category A (1). In connection with that argument, respondent maintains that Supreme Court should have granted its motion for reargument/renewal, as Brundige's affidavit established the undue burden of producing the limited subset of documents as narrowed by the individuals identified in category D (5). On this latter point, we note that, although this Court has held that a motion to renew and reargue "is not a proper procedural vehicle to address a final judgment" (Gorman v Hess, 301 AD2d 683, 686 [3d Dept 2003]; see Maddux v Schur, 83 AD3d 1156, 1157 [3d Dept 2011]), it has "implicitly sanctioned [reargument following judgment in a CPLR article 78 proceeding] in the past" (Matter of Rinaldi v Zoning Bd. of Appeals of Town of Stillwater, 23 AD3d 810, 811 [3d Dept 2005]; see e.g. Matter of Cortex Tel. LLC v New York State Dept. Health, 222 AD3d 1083, 1084 [3d Dept 2023]). Here, although Supreme Court indicated that it was denying respondent's motion to renew/reargue, the substance of its decision makes clear that it was addressing the merits of the motion and adhering to its prior determination, thus rendering the appeal of that decision properly before us (see Matter of Kitto v City of Albany, N.Y. Dept. of Police, 213 AD3d 1165, 1168 n 2 [3d Dept 2023]; Matter of Manufacturers & Traders Trust Co. v J.D. Mar. Serv., 187 AD3d 1249, 1251 [3d Dept 2020]; Rodriguez v Jacoby & Meyers, LLP, 126 AD3d 1183, 1184 [3d Dept 2015], lv denied 25 NY3d 912 [2015]).
As to Supreme Court's directive to produce a limited subset of [*3]the documents requested by petitioner under category A (1), we disagree with respondent's contention that doing so amounts to an impermissible modification of petitioner's original request. To begin, the authority for a court to narrow a FOIL request is implicitly reflected by the statutory language, which grants preference to an agency appeal "taken from an order of the court requiring disclosure of any or all records sought" (Public Officers Law § 89 [4] [d] [ii] [emphasis added]). In any event, Supreme Court did not, as respondent suggests, order production based upon "new document descriptions that [were] provided for the first time" in the proceeding (Matter of Reclaim the Records v New York State Dept. of Health, 185 AD3d 1268, 1272 [3d Dept 2020], lv denied 36 NY3d 910 [2021]). Rather, the limited production was predicated on the court's evaluation of the entire universe of documents falling under category A (1) and respondent's characterization of the efforts needed to evaluate and prepare responsive files for production. Although respondent contends that it should have been afforded an opportunity to make a new administrative determination and set forth its justification for asserting undue burden relative to the narrowed production, it is evident that it had already thoroughly done so in the context of this proceeding, and those grounds were considered by Supreme Court as part of its decision to adhere to its prior determination.[FN3] Indeed, the court made various references to the second Brundige affidavit in support — specifically, the assertions pertaining to the individuals contained in the response to category D (5) and the burden pertinent to review of that set of files. That affidavit provided the calculations used in asserting how much time and resources were presumably required to comply with the reduced set of individuals whose files would have to be reviewed. In sum, we find that ordering a narrowed subset of documents within the original request does not constitute "a new request or an amendment or clarification of the original request" that would necessitate a new administrative hearing (see id.) and we discern no reason to remand the matter to respondent for respondent's consideration as to the undue burden of producing the subset of documents to category A (1), as respondent has already assessed the associated burden, made its determination and asserted that justification before Supreme Court (see generally Whitfield v FOIL Appeals Officer, Dept. of Corrections & Community Supervision, 221 AD3d 1341, 1343, 1344 n 2 [3d Dept 2023]). We therefore turn to considering whether the ordered disclosure presents an undue burden on respondent.
"It is well settled that FOIL imposes a broad duty of disclosure on government agencies and all agency records are presumptively available for public inspection and copying unless one of the statutory exemptions applies, permitting the agency to withhold the records" (Matter of Getting the Word [*4]Out, Inc. v New York State Olympic Regional Dev. Auth., 214 AD3d 1158, 1159 [3d Dept. 2023] [internal quotation marks and citations omitted]; accord Matter of New York State Corr. Officers & Police Benevolent Assn., Inc. v New York State Dept. of Corr. & Community Supervision, 224 AD3d 974, 975 [3d Dept 2024]; see Matter of Appellate Advocates v New York State Dept. of Corr. & Community Supervision, 40 NY3d 547, 551 [2023]). As relevant here, "[t]he repeal of Civil Rights Law § 50-a reflect[s] a strong legislative policy promoting transparency of police disciplinary records and eliminat[ing] any claim of confidentiality in them" (Matter of NYP Holdings, Inc. v New York City Police Dept., 220 AD3d 487, 488 [1st Dept 2023] [internal quotation marks, ellipsis and citation omitted], lv granted 41 NY3d 988 [2024]). Indeed, the legislative materials clearly indicate a desire that disclosure of these records be treated like any other public record, along with the incumbent protections on private information contained therein (see Senate Introducer's Mem in Support, Bill Jacket, L 2020, ch 96 at 9). To this end, the parties do not dispute that the sensitive nature of certain information contained in the responsive records sought under category A (1) precludes the use of an outside agency and, to that end, respondent was properly permitted to raise the contention that production would be overly burdensome (see Matter of Puig v New York State Police, 212 AD3d1025, 1027 [3d Dept 2023]; Matter of Jewish Press, Inc. v New York City Dept. of Educ., 183 AD3d 731, 733 [2d Dept 2020]).
Relevant to the burden imposed by production, Brundige averred in her initial affidavit that a response to, among other requests, category A (1) would necessitate a review of nearly 12,000 employee files. Brundige noted that, although the majority of those files are maintained in paper form, various prior requests through FOIL or criminal discovery had rendered approximately 1,600 files accessible electronically.[FN4] Brundige also noted that the employee files are stored in various locations and would have to be retrieved in waves. Beyond these generalized assertions of volume and logistical issues, the initial Brundige affidavit offers little more than an assertion that review and production would take "decades" and cost "hundreds of thousands of dollars, if not more" to support the characterization of production as a "herculean" task. To this end, Supreme Court's determination as to undue burden was clearly predicated on the assessment that a search through every employee file, including general staff, would have been burdensome inasmuch as there was no guarantee that respondent would uncover a disciplinary history in each file reviewed.[FN5] However, these findings precipitated the court's determination to limit the production of records to those cases in which respondent could be sure to locate a disciplinary file, which the court noted was a far more succinct production than petitioner [*5]originally sought in category A (1). In her subsequent affidavit in support of respondent's motion to renew, Brundige reiterated that review of individual personnel files required a manual search. Further, Brundige suggested that, in her experience, some files may contain a small number of pages and others might be comprised of over 1,000 pages. Accordingly, she posited an average of 50 pages per file and five minutes per page for review, which supported her calculation of the total time commitment necessary to review the files that she understood were responsive to the court's order. In sum, Brundige asserted that the undue burden associated with disclosure is predicated on the fact that respondent's system for storing records "prior to the repeal of Civil Rights Law § 50-a did not anticipate and are not conducive to the widespread production of personnel and past disciplinary records in the manner that petitioner is seeking and that [Supreme Court] has ordered."
Distilled to their core, respondent's arguments are predicated on the volume of review and the overall effect on its resources. However, "an agency may not evade the broad disclosure provisions of FOIL by merely asserting that compliance could potentially require the review of a large volume of records" (Matter of Puig v New York State Police, 212 AD3dat 1027 [internal quotation marks, brackets and citation omitted]; see Matter of Konigsberg v Coughlin, 68 NY2d 245, 249 [1986]; Matter of M. Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 83 [1984]).[FN6] To this point, although the language in Public Officers Law § 89 (3) (a) is inartful in setting forth an agency's obligation pertaining to an undue burden of production (see Matter of Goldstein v Incorporated Vil. of Mamaroneck, 221 AD3d 111,121 [2d Dept 2023]), the relevant legislative history suggests that the 2008 amendment to FOIL was intended to "ensure that FOIL requests for public documents are complied with and that an agency cannot use the excuse that the FOIL request is voluminous, burdensome or it lacks the staff to copy the documents" regardless of the availability of a third party to assist in that endeavor (Senate Introducer's Mem in Support, Bill Jacket, L 2008, ch 223 at 8; see Division of the Budget Mem in Support, Bill Jacket, L 2008, ch 223 at 13 [advising that the bill would "[p]rescribe that an entity cannot deny a FOIL request for reasons such as the request is burdensome or voluminous, or it lacks the staff to reproduce the records; and [the bill] specifies that the entity may procure outside professional services to comply with the request"]; see also Office of General Servs Mem in Support, Bill Jacket, L 2008, ch 223 at 26 [noting that the language concerning an assertion of undue burden "appears to legitimize the denial of a FOIL request that is voluminous or burdensome, if an agency can not engage an outside professional service to assist it, which would not otherwise be true under the law, and[*6]. . . was not the intent"]). To be sure, this Court is mindful of, and does not intend to diminish, the large volume of records that respondent must ultimately review in order to comply with the narrowed directive. However, the time-consuming process entailed by disclosing records that have been, in most respects, completely shielded for nearly 50 years does not provide justification for indefinitely foreclosing disclosure based solely on the volume of the request (see Matter of New York Comm. for Occupational Safety & Health v Bloomberg, 72 AD3d 153, 162 [1st Dept 2010]).
As to the effect on respondent's resources, we note two important assertions from the Brundige affidavits. First, Brundige noted that a review of the disciplinary files requested in category A (1) as limited by the list in category D (5) entails scanning the documents for review. In connection with that statement, Brundige noted that respondent is currently responding to other requests pertaining to the disciplinary records which would also entail scanning of disciplinary records (see e.g. Matter of Puig v New York State Police, 80 Misc 3d 383, 392 [Sup Ct, Albany County 2023]). Second, Brundige acknowledged that respondent has begun implementing new filing procedures for disciplinary records that will improve its ability to review and respond to requests for production of such documents in the future. Indeed, Brundige stated that respondent is "endeavoring to purchase new software and hardware to scan and manage the records and to hire additional personnel to perform the tasks required" and has made efforts to "develop[ ] new processes to streamline the future availability of disciplinary records."[FN7] Considering these prospective enhancements to respondent's review and disclosure processes which, as Brundige recognized, will ease some of the challenges of production moving forward, we do not find that respondent has established that complying with the disclosure ordered by Supreme Court would impose an undue burden. In that vein, we fail to discern any compelling reason to indefinitely halt or delay production until those resources and processes are fully implemented, as there is no indication that production could not occur on a parallel track. Although disclosure of the material at issue may indeed be slow at inception and necessitate a rolling production over several years, that compromise sufficiently mitigates the burden facing respondent, adequately contemplates respondent's future changes to its record-keeping processes and resources, conforms with the broader goals of disclosure pursuant to FOIL and, most importantly, reflects the new reality of disclosure obligations for law enforcement agencies prompted by the repeal of Civil Rights Law § 50-a (see Legal Aid Socy. v Records Access Officer, 2023 NY Slip Op 31283[U], *7-8 [Sup Ct, NY County 2023]; see also Matter of NYP Holdings, Inc. v New York City Police Dept., 220 AD3d at 489). For these reasons, we affirm.
Pritzker[*7], J.P., Reynolds Fitzgerald, Ceresia and Mackey, JJ., concur.
ORDERED that the judgment and the order are affirmed, without costs.

Footnotes

Footnote 1: A motion to intervene was submitted on behalf of the Police Benevolent Association, which was granted by Supreme Court. However, the association failed to timely submit a brief to the court.

Footnote 2: Supreme Court, in resolving a subsequent motion by respondent to clarify the April 2023 order, explained that its order directing production of a subset of documents in category A (1) encompassed all individuals identified in the category D (5) spreadsheet, not just those that were unredacted in the original production, which, according to respondent, amounts to 8,109 individuals.

Footnote 3: At oral argument, respondent suggested that it might rely on other bases beyond the burden associated with narrowed production. However, we find that assertion without merit, particularly since respondent has made no reference to any other applicable exemption on the original request, on its motion to renew/reargue or on appeal.

Footnote 4: In her second affidavit, Brundige acknowledged that respondent only maintains records of complaints that did not result in a finding of misconduct dating back to 2013, thus limiting the amount of "unfounded" complaints, which are those determined as unsubstantiated or closed after investigation, to approximately 1,500.

Footnote 5: Supreme Court in its denial of respondent's motion to dismiss directed respondent to, among other things, provide "[t]he approximate number of personnel hours it would take to search all personnel files covering the period" encompassing the request "and to assess, extract and copy responsive documents." The Brundige affidavit submitted in support of respondent's answer fails to address this inquiry with any notable specificity.

Footnote 6: We note that, in ascribing a 50-page average for each disciplinary file, Brundige failed to indicate that any specific file searched revealed the breadth of documents asserted that would support that calculation (see Matter of Puig v New York State Police, 80 Misc 3d 383, 393 [Sup Ct, Albany County 2023]; compare Matter of Jewish Press v New York City Police Dept., 205 AD3d 613, 614 [1st Dept 2022]). Moreover, Brundige's assertions concerning the average size of each file appear contrary to a subset of documents pertaining to a similar request (see Matter of Puig v New York State Police, 80 Misc 3d at 893; see also Matter of NYP Holdings, Inc. v New York City Police Dept., 77 Misc 3d 1211[A], *3-4 [Sup Ct, NY County 2022], mod 220 AD3d 487 [1st Dept 2023], lv granted 41 NY3d 988 [2024]).

Footnote 7: At oral argument, respondent noted that it has taken steps "to scan some of the paper files so that it is a little easier to manage the records," "hired additional staff as it indicated it intended to do" and "has a long-term plan of ultimately putting the disciplinary records on its website."